USCA1 Opinion

 

 March 23, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1584 UNITED STATES OF AMERICA, Appellee, v. ANGEL A. SOLDEVILA-LOPEZ, a/k/a "ANGELO," Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on March 3, 1994, is amended as follows: Page 2, line 3 - delete "by a jury." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1584 UNITED STATES OF AMERICA, Appellee, v. ANGEL A. SOLDEVILA-LOPEZ, a/k/a "ANGELO," Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jos Antonio Fust , U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Henry F. Furst for appellant. ______________ Jorge E. Vega-Pacheco, Assistant United States Attorney, ______________________ with whom Guillermo Gil, United States Attorney, was on brief for _____________ appellee. ____________________ March 2, 1994 ____________________ TORRUELLA, Circuit Judge. On August 17, 1992, a jury ______________ found defendant-appellant Angel A. Soldevila-L pez ("Soldevila") guilty jury of four counts of conspiracy to possess with the intent to distribute fifty kilograms of cocaine and using a communication facility in the commission of the offense, in violation of 18 U.S.C. 2 and 21 U.S.C. 841(a)(1), 843(b), and 846. On November 27, three days before sentencing date of November 30, trial counsel for Soldevila, Nicol s Nogueras ("Attorney Nogueras") raised the issue of Soldevila's competence to be sentenced in a motion requesting psychiatric and psychological examination. The district court granted Soldevila's motion. Following a psychiatric evaluation by both a court appointed psychiatrist and a court appointed psychologist, a competency hearing was set for May 24, 1993. At the hearing, upon the suggestion of counsel for Soldevila, the court concluded that Soldevila should be reevaluated on that day to determine his competency for sentencing purposes. Dr. Scott A. Duncan, the court appointed psychologist, reevaluated Soldevila and the hearing continued on the next day. On May 25, doctor Duncan presented an addendum to his previous evaluation of Soldevila, stating for the first time that Soldevila was "malingering" (i.e., feigning incompetency). The ____ district court denied Soldevila's motion for a continuance, found Soldevila competent to be sentenced and imposed sentence. -2- 2 Soldevila appeals from the final judgment of conviction and sentence. BACKGROUND BACKGROUND __________ Soldevila has a recent history of psychiatric problems. As recently as the spring of 1992 he was receiving psychotherapy, including prescription medications for his illness.1 This information, however, was not brought to the attention of the district court at any time during trial or at anytime prior to Attorney Nogueras' motion for psychiatric and psychological evaluation of November 27, 1992. In the November 27 motion, Attorney Nogueras stated that Soldevila, in conversation with counsel, "looks and reacts introvertedly, like absent from the conversation, very depressed, and in a mental and emotional condition that requires a psychiatric and psychological examination before sentencing." Attorney Nogueras indicated that he had observed related symptoms during trial, but had attributed them to Soldevila's anxiety, believing they were "due to the tension created by his arrest, imprisonment and trial." Following trial, Attorney Nogueras discovered additional facts which led him to conclude that he had "undervalued or underestimated the nature and extent of [Soldevila's] mental and ____________________ 1 Appellate counsel obtained Soldevila's medical history from Soldevila's daughter, Blanca. Much of the history is contained in photostatic copies of prescriptions appended to Soldevila's brief and in a letter dated May 10, 1993, written by Blanca in which she observes that she had supplied Attorney Nogueras, with various medical records in June of 1992. She also stated that she had suggested to Nogueras that he submit a motion to provide Soldevila with proper medical treatment but that her advice was not heeded. -3- 3 emotional condition at the time of the alleged commission of the offense . . . and at the time of trial." In particular, in a November 23, 1992 conversation between counsel and Dr. Jorge Prieto, the prison's doctor, doctor Prieto, informed Attorney Nogueras that Soldevila was prescribed "Xanax," used for the management of anxiety disorder or the short term relief of symptoms of anxiety, Physicians' Desk Reference at 2456 (48th ed. 1994) (herinafter "PDR"), and "Ativan"2 during trial in doses "[c]ounsel believed did not affect defendant's awareness of the consequences of the proceedings against him." Doctor Prieto said that his observations of Soldevila on June 29 (i.e. prior to ____ trial), led him to conclude that Soldevila had a "psychiatric condition." Doctor Prieto also indicated that, by May 27, 1992, Soldevila "was not communicative and had lapses of absence." Therefore, Attorney Nogueras felt that a psychiatric examination was needed. In response to Soldevila's motion, the district court judge stated that he had seen Soldevila "interact with counsel during the case, and [Soldevila] was fully oriented, participated, from what I could see from the bench, fully reacted when there was something to react to. [Sic] Smiled and dealt with the points that were scored when the defense scored such points. It was quite obvious that the person that was before me ____________________ 2 Ativan is an antianxiety agent which "is not recommended for use in patients with a primary depressive disorder or psychosis." PDR at 2516. With regards to this medication, the PDR warns that "[i]n patients with depression accompanying anxiety, a possibility for suicide should be borne in mind." Id. ___ -4- 4 here was not a zombie of any kind. He was a person who was here oriented in all spheres." Still, the district court granted Soldevila's motion and ordered that Soldevila undergo psychological and psychiatric evaluation at the Springfield, Missouri Medical Center for Federal Prisoners to determine whether he suffered from a mental disease and then return to Puerto Rico for final sentencing. The district court entered a provisional sentence against Soldevila pursuant to 18 U.S.C. 4244(d). On March 9, the Bureau of Prisons issued a forensic evaluation of Soldevila, signed by Scott A. Duncan, Psy.D, Forensic Studies Coordinator of the United States Penitentiary in Atlanta ("doctor Duncan"), Angel L pez M.Ed. and Sara Boucchechter, M.A.. The report concluded that Soldevila suffered from "major Depression, Recurrent, With Psychotic Features, Mood Congruent." On April 20, 1993, in response to the court's inquiry regarding "the approximate time frame that Mr. Soldevila-L pez suffered from psychotic depression," doctor Duncan submitted to the district judge an "Addendum to Psychological Evaluation." In this addendum, doctor Duncan concluded that, in his professional opinion, Soldevila's psychotic depression "originated approximately in September/October 1992 as a result of stress stemming from being found guilty of his current charges, being tried . . . and being housed in a stressful environment." -5- 5 On April 27, 1993, the district court ordered that Soldevila be transferred to Puerto Rico no later than May 20, 1993, for a competency hearing to be held on May 24, 1993. On May 12, 1993, Henry F. Furst, current appellate counsel for Soldevila, ("Attorney Furst") sent Attorney Nogueras a letter via telefax informing Nogueras that the Soldevila family wanted a psychiatrist, Dr. Steven S. Simring, to examine Soldevila as soon as possible. Soldevila was transferred to the Metropolitan Detention Center in Guaynabo, Puerto Rico ("MDC") on May 20, 1993, four days before the competency hearing was to take place. Attorney Nogueras moved for a continuance, in order for doctor Simring to evaluate Soldevila and be presented as an expert witness on Soldevila's behalf. The district court denied the May 21, 1993 motion for a continuance. On the same day, Soldevila filed a motion requesting the district court's permission to have doctor Simring interview him for a psychiatric assessment, to allow Attorney Furst to appear at the competency hearing, and to duplicate copies of records, transcripts and tapes used during the trial. The district court granted Soldevila's latter motion in all respects. The competency hearing took place on May 24 and 25, 1993. On May 24, Attorney Nogueras told the court he had visited Soldevila recently but that Soldevila was not communicative. Attorney Nogueras said he found "[him]self completely incapacitated to convey to [Soldevila] the meaning of this hearing." Attorney Nogueras further informed the court that one -6- 6 of the prison guards referred to Soldevila as "my Valium man." Attorney Nogueras also alluded to the availability of doctor Simring to examine Soldevila, but suggested this was not possible given the court's denial of Soldevila's motion for a continuance. Doctor Duncan then testified that when Soldevila arrived at the United States Penitentiary in Atlanta, on February 3, 1993, Soldevila was suicidal and possibly suffering from psychosis. He was unable to concentrate sufficiently to complete psychological testing. Soldevila was then administered "Haldol," an antipsychotic medication. In doctor Duncan's last contact with Soldevila, ten days prior to the hearing, Soldevila appeared "oriented to time, place, person, and reason of being there." Doctor Duncan indicated that he stood by his previous report of March 9 in which he gave his opinion that Soldevila needed immediate hospitalization for treatment for psychotic depression and that he should remain on "Haldol." At the request of Attorney Nogueras, the proceedings were adjourned to permit doctor Duncan to interview Soldevila and to review his medical charts and determine whether he had continued to take the medication prescribed to him in Atlanta. The court directed doctor Duncan to provide the defense access to information regarding the medication Soldevila was receiving at MDC, as well as a copy of Soldevila's medical chart.3 The court ____________________ 3 After Attorney Nogueras asked the court to order him access to information regarding the medication Soldevila had been taking at MDC, the following exchange took place: MR. NOGUERAS: Your Honor, of course, your -7- 7 also indicated that doctor Simring, would be permitted to examine Soldevila if he flew to Puerto Rico. On May 25, Soldevila filed a motion requesting further psychiatric evaluation. The motion stated that the government had not complied with the court's May 24 order to provide defense counsel a copy of Soldevila's chart and requested that the government comply. Attached to the motion was the May 10th letter sent to doctor Duncan by Soldevila's daughter, Blanca, setting forth Soldevila's medical history of psychiatric problems. Attorney Nogueras indicated that he was attempting to locate Dr. Agust n Garc a, a local psychiatrist or clinical psychologist, to analyze Soldevila's psychiatric condition. Also, on May 25, doctor Duncan filed a second addendum to the forensic report. The addendum concluded that Soldevila was malingering. Doctor Duncan indicated that the previous day he reviewed Soldevila's medical records and met with Dr. Vasco Daub n, the chief psychologist at MDC, and together they conducted an interview of Soldevila. During the interview, doctors Duncan and Daub n gave Soldevila a neuropsychological memory test for malingering, called the Rey 15-item test. Because Soldevila's performance was ____________________ Honor has to understand that if we get the information this afternoon, we do have to make a decision in regard to whether we would be then having the time to get to doctor Simring to react on this information. THE COURT: Believe me, I will give you the time you need. Just remember also that you have had since November 3rd [sic] to do this. -8- 8 lower than that expected of even someone who was severely brain damaged, doctor Duncan concluded Soldevila was malingering. As further evidence of malingering, doctor Duncan indicated that Soldevila claimed to have practically every symptom about which he was asked, whether or not they were actually symptoms of psychosis. Additionally, Soldevila complained of hearing voices primarily at night, a time of day when his use of "Haldol" was in fact maximized. On occasion, Soldevila was able to understand questions asked him in English and to respond in Spanish, an ability requiring high cognitive skills, inconsistent with psychosis. Doctor Duncan concluded that he had seen nothing that would indicate Soldevila was incapable of understanding the charges or cooperating with his lawyer and that he was competent for sentencing purposes. Doctor Daub n testified to his participation in the interviews of Soldevila and agreed with doctor Duncan's diagnosis of malingering. On May 25, 1993, the court found that Soldevila was competent to be sentenced. The court pointed out that, until the verdict, there had been no indication that Soldevila had any kind of mental defect that would have impeded the trial. The court found that Soldevila "understood what was happening and . . . assisted his lawyer in the preparation of the case." The district court judge further stated that "[h]ad it been different, I would have been notified by Mr. Nogueras, and he did not tell me anything at the time." The court found that once found guilty and placed in the Puerto Rico State penitentiary, -9- 9 Soldevila became depressed and psychotic, but that, he was prescribed medication and presently "is competent to be sentenced." On appeal, Soldevila argues that (1) Attorney Nogueras' failure to timely investigate and argue Soldevila's lack of competency to stand trial denied Soldevila effective assistance of counsel; (2) Attorney Nogueras had an actual conflict of interest with Soldevila and the district court erred in failing to bring this conflict to the attention of Soldevila; and (3) the district court erred in refusing to grant Soldevila's motion for a continuance of the competency hearing and in finding that Soldevila was competent to be sentenced. INEFFECTIVE ASSISTANCE OF COUNSEL INEFFECTIVE ASSISTANCE OF COUNSEL _________________________________ Soldevila's claim that trial counsel's failure to timely investigate and argue Soldevila's lack of competency to stand trial denied Soldevila effective assistance of counsel is raised for the first time on direct appeal. In this circuit "a fact-specific claim of ineffective legal assistance cannot be raised initially on direct review of a criminal conviction, but must originally be presented to the district court." United ______ States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), cert. ______ _______ _____ denied, 112 S. Ct. 986 (1992) (citations omitted). An exception ______ to this rule exists "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim." Id. ___ (citations omitted). Under such circumstances, "an appellate -10- 10 court may dispense with the usual praxis and determine the merits of such a contention on direct appeal." Id. (citations omitted). ___ The present case does not fall within this exception. In determining the merits of a claim for ineffective assistance of counsel, our review of counsel's performance is "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d 302 (1st Cir. _____________ _______ 1991). In the present case, the district court did not make any findings of critical facts such as when Attorney Nogueras became aware of Soldevila's psychiatric history and the exact nature of that history that would enable us to determine what Attorney Nogueras "knew or should have known" at different stages during his representation of Soldevila. Neither are these facts clear from the record. The proper method for pursuing claims of this nature is through a collateral proceeding in district court under 28 U.S.C. 2255 so that proper factual determinations can be made. United States v. Sutherland, 929 F.2d 765, 774 (1st Cir. _____________ __________ 1991), cert. denied, 112 S. Ct. 83 (1991) (citations omitted). ____________ CONFLICT OF INTEREST CONFLICT OF INTEREST ____________________ Soldevila argues that Attorney Nogueras had an actual conflict of interest with Soldevila and that such conflict requires the reversal of Soldevila's conviction. Soldevila contends that the conflict developed after Attorney Nogueras realized that he had erred by failing to raise the issue of Soldevila's mental competence at an earlier stage in the -11- 11 proceedings. At that point, Attorney Nogueras had an interest in raising the competency issue to appease Soldevila and Soldevila's family, but also had an interest in losing the issue on the merits to show that he was not at fault for having failed to raise it in a timely fashion. Indeed, the worst case scenario for Attorney Nogueras, argues Soldevila, would have been for the court to have found that the competency issue may have had merit but was waived or was now otherwise not susceptible to definitive resolution. These potential problems for Attorney Nogueras were neatly resolved by the court's denial of the defense claim on the merits. Although Soldevila's claim of actual conflict of interest is, in effect, a claim of ineffective assistance of counsel, we find the record "sufficiently developed to allow reasoned consideration" of this particular claim on direct appeal. See Natanel, 938 F.2d at 309; see discussion infra p.9. ___ _______ ___ _____ Soldevila did not object to any conflict of interest at trial. In Cuyler v. Sullivan, 446 U.S. 335 (1980), the Supreme ______ ________ Court established that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348 ______ (footnote omitted). Although this standard was first developed in the context of counsel's joint representation of criminal defendants, it has been applied generally to other conflict of interest situations, including alleged conflicts between counsel -12- 12 and his or her client. United States v. Rodr guez, 929 F.2d 747, _____________ _________ 749 (1st Cir. 1991) (citations omitted). It is well settled that "some conflicts of interest so affront the right to effective assistance of counsel as to constitute a per se violation of the [S]ixth [A]mendment." _______ United States v. Aiello, 900 F.2d 528, 531 (2d Cir. 1990) (citing _____________ ______ Cuyler, 446 U.S. at 349-50). Such is the case where a lawyer ______ suffers from an actual conflict of interest that prevents him or her from presenting a vigorous defense of a defendant. United ______ States v. Eisen, 974 F.2d 246, 264 (2d Cir. 1992). "Upon a ______ _____ showing of such a conflict, a defendant need not demonstrate prejudice because a conflict inhibiting a lawyer's performance is such an affront to the right to effective assistance of counsel that . . . [it] demonstrates a denial of that right." Id. See ___ ___ also United States v. Marcano-Garc a, 622 F.2d 12, 17 (1st Cir. ____ _____________ ______________ 1980) (citing United States v. Hurt, 543 F.2d 162, 165-68 (D.C. _____________ ____ Cir. 1976)) (effective assistance of counsel is impossible when the attorney-client relationship is corrupted by competition between the client's interests and the personal interests of his attorney). This circuit has held that in order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties. Guaraldi v. Cunningham, 819 F.2d 15, 17 ________ __________ -13- 13 (1st Cir. 1987) (citations and quotations omitted). Courts have recognized actual conflicts of interest between an attorney and his client when pursuit of a client's interests would lead to evidence of an attorney's malpractice. See United States v. ___ ______________ Ellison, 798 F.2d 1102, 1106-08 (7th Cir. 1986), cert. denied, _______ ____________ 479 U.S. 1038 (1987) (actual conflict where, in pro se hearing, _______ defendant alleged information which, if true, counsel acknowledged, would be tantamount to malpractice on behalf of counsel); see also Mathis v. Hood, 937 F.2d 790, 795 (2d Cir. ________ ______ ____ 1991) (finding actual conflict of interest in lawyer's representation of defendant during appeal where defendant filed a grievance with disciplinary committee prior to appeal due to attorney's delay in filing appellate brief). In the present case, Soldevila has not made the requisite showing of an actual conflict of interest. Soldevila has not shown that Attorney Nogueras did not undertake an alternative strategy or tactic due to Attorney Nogueras' other interests or loyalties. The circumstances alleged by Soldevila, as a matter of law, do not amount to an actual conflict of interest between Attorney Nogueras and Soldevila. Unlike the circumstances presented in Ellison or Mathis, at the time _______ ______ Attorney Nogueras represented Soldevila, both at trial and during the competency hearing, Soldevila had neither accused Attorney Nogueras of malpractice nor filed any grievance regarding Attorney Nogueras' representation. Neither are the circumstances of this case akin to those which in which an actual conflict of -14- 14 interest amounting to a per se violation of the Sixth Amendment ______ has been found.4 Soldevila's claim that Attorney Nogueras had a conflict of interest during his representation is based on mere speculation. "A theoretical or merely speculative conflict of interest will not invoke the per se rule." Id. (citing United ______ ___ ______ States v. Aeillo, 900 F.2d 528, 530-31 (2d Cir. 1990)).5 ______ ______ Soldevila further argues that the court's failure to warn Soldevila of the serious conflicts lurking in his continued representation by Mr. Nogueras deprived him of due process and of effective assistance of counsel. The Constitution does not require a trial court to warn a defendant about the risk of conflict in every case. Guaraldi ________ ____________________ 4 Per se Sixth Amendment violations have been found where trial ______ counsel was implicated in the crime for which his client was on trial, Marcano-Garc a, 622 F.2d at 17 (citing United States v. ______________ ______________ Cancilla, 725 F.2d 867 (2d Cir. 1984)), and where a defendant was ________ represented by a person not authorized to practice law. Marcano- ________ Garc a, 622 F.2d at 17 (citing Solina v. United States, 709 F.2d ______ ______ _____________ 160 (2d Cir. 1983)). 5 Because Soldevila has failed to show an actual conflict of interest, in order to prevail on his claims of ineffective assistance of counsel, "he must overcome the presumption that his counsel's conduct was reasonable by satisfying the two pronged standard of Strickland v. Washington, 466 U.S. 668 (1984). [He] __________ __________ must show (1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Eisen, 974 F.2d at 265 (citing _____ Strickland v. Washington, 466 U.S. at 694 (internal quotations __________ __________ and citations omitted)). We express no view on whether Soldevila's allegations satisfy this standard as Soldevila claims only that Attorney Nogueras had an actual conflict of interest with Soldevila and we believe that ______ any other claims of ineffectiveness of counsel that may arise in the present case should not be addressed on direct appeal. -15- 15 v. Cunningham, 819 F.2d at 18. "Defense counsel have an ethical __________ obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. . . . Unless the trial court knows or ___________________________________ reasonably should know that a particular conflict exists, the _________________________________________________________________ court need not initiate an inquiry." Id. at 18 (alteration in ____________________________________ ___ original) (quoting Cuyler, 446 U.S. at 346-47). ______ We have not found an actual conflict of interest that affected Soldevila's trial, thus the trial court could not have known of one. "We see no 'special circumstances' that gave rise in this case to greater potential conflicts of interest than those that exist whenever a . . . lawyer" raises any issue in a ________ proceeding that if raised earlier would have been more advantageous to his or her client. See id. Hence, we conclude ___ ___ that the district court's failure to advise Soldevila of possible conflicts of interest and the related risks of his continued representation by Attorney Nogueras did not violate his constitutional rights. REFUSAL TO GRANT A CONTINUANCE & FINDING OF COMPETENCY REFUSAL TO GRANT A CONTINUANCE & FINDING OF COMPETENCY ______________________________________________________ Soldevila contends that in light of the last minute diagnosis of malingering, the district judge improperly denied a continuance that would have allowed Soldevila to be examined by his own expert and subsequently erred in finding that Soldevila was competent to stand trial. We review the district court's refusal to grant a continuance for abuse of discretion. United States v. Rodr guez _____________ _________ -16- 16 Cort s, 949 F.2d 532, 545 (1st Cir. 1991). Limits on the court's ______ discretion to grant a continuance are imposed by defendant's constitutional rights, including his rights to assistance of counsel and to the testimony of witnesses on his behalf. United ______ States v. Waldman, 579 F.2d 649 (1st Cir. 1978) (citations ______ _______ omitted). "Only 'unreasonable and arbitrary insistence upon expeditiousness in the face of justifiable request for delay' constitutes an abuse of discretion." Rodr guez Cort s, 949 F.2d ________________ at 545 (quoting United States v. Torres, 793 F.2d 436, 440 (1st _____________ ______ Cir.), cert. denied, 479 U.S. 889 (1986)). ____________ In reviewing the district court's refusal to grant a continuance for further psychiatric evaluations we consider: (1) the extent of Soldevila's diligence in preparing his defense prior to the date set for hearing; (2) the likely utility of the continuance if granted; (3) the inconvenience to the court and the opposing party, including witnesses; and (4) the extent to which the moving party may have suffered prejudice from the denial. United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir. _____________ _____ 1985), amended, 764 F.2d 675 (9th Cir. 1985); United States v. _______ _____________ Pope, 841 F.2d 954, 956 (9th Cir. 1988). ____ 1. Diligence 1. Diligence _________ It is clear that Attorney Nogueras could have exercised greater diligence locating additional psychiatrists to examine his client prior to the competency hearing. As pointed out by appellate counsel for Soldevila, after Attorney Nogueras raised the issue of Soldevila's competence to be sentenced, "defense -17- 17 counsel did nothing to support his previous suggestion that defendant may have been incompetent . . . from November 30, 1992 to May 19, 1993, trial counsel did nothing, waiting virtually until the eve of the next proceedings to take any action. Thus, defense counsel never retained a psychiatrist to examine defendant, nor did he take any other action calculated to flesh out facts supporting the defense position." At no time prior to May 25, the final day of the competency hearing, did anyone contend that Soldevila was malingering. Attorney Nogueras was not given doctor Duncan's final report, concluding that Soldevila was malingering, until after 4:00 p.m. on May 25, only moments before the final hearing. In light of this surprise, attorney Nogueras was unable to prepare any response to doctor Duncan's allegedly surprising conclusion. Attorney Nogueras was diligent in responding to the allegations that Soldevila was malingering as soon as possible. By no means do we endorse Attorney Nogueras' behavior in waiting until the last minute to try to obtain his own experts, followed by what could be perceived as a strategy to buy more time by first asking the court for a recess in order for doctor Duncan to reevaluate Soldevila and then filing a motion for a continuance in order to have time to respond to any findings doctor Duncan might make. Following doctor Duncan's new and unexpected conclusion that Soldevila was malingering, however, Soldevila was entitled to an opportunity to prepare a response to that finding. -18- 18 "[A]ppellant was entitled to call psychiatric witnesses of his own choosing who, after examining appellant, could testify as to his mental state." United States v. Flynt, 756 F.2d at 1359. _____________ _____ 2. Utility of the Continuance 2. Utility of the Continuance __________________________ Where a continuance is sought in order to provide time for a psychiatric evaluation, a defendant cannot be expected to present to the court, in advance, the substance of the witness's testimony in order to establish its utility. Pope, 841 F.2d at ____ 954. The relevance of additional expert testimony, however, should have been apparent from Soldevila's behavior and Attorney Nogueras' comments at both the competency hearing and final sentencing on May 24 and May 25. See id. ___ ___ At the May 24 hearing, Attorney Nogueras informed the court that on May 23, he and Attorney Furst went to see Soldevila at the MDC and that during this visit, Attorney Nogueras was unable "to get through to [Soldevila] at all," Attorney Nogueras found himself completely incapacitated to convey to Soldevila the meaning of the upcoming competency hearing, and Soldevila did not recognize Attorney Furst, who had been his attorney for a long time. On May 25, before the district court judge imposed the final sentence, Attorney Nogueras informed the court that he had just asked Soldevila if he knew what was going on and Soldevila said no. At sentencing the following exchange took place: THE COURT: . . . If he admits guilt today, he says I am sorry, Judge, for what I did. I bought those 25 kilos of cocaine. He says that, I will give him the two points. If he -19- 19 doesn't say that, I won't . . . . MR. NOGUERAS: I will ask my client that right now. THE COURT: He will have to explain to me why he is sorry. MR. NOGUERAS: To be on the record I want, I don't even know if he understands. MR. NOGUERAS: Well, let the record show, your Honor, that I made four different questions to defendant. One, what was going on; number two, did he buy cocaine; number three, does he know that he might get two points reduced in his sentencing. He says, no, I don't remember what [sic]. THE COURT: Okay. So, he has no two points . . . . (A. 232). The continuance would have clearly been useful to enable Soldevila to present expert testimony that might respond to doctor Duncan's new allegations of malingering. See United ___ ______ States v. Barrett, 703 F.2d 1076, 1081 (9th Cir. 1983) ______ _______ ("defendant 'probably could have obtained an expert to assist him [if he had] been given more time. . . . In failing to grant the requested continuance . . . the trial court clearly abused its discretion.' (citation omitted)") (quoted in Flynt, 756 F.2d at _____ 1360). The continuance would also have helped counsel prepare an explanation for Soldevila's responses at sentencing. 3. Inconvenience 3. Inconvenience _____________ Undeniably, the prospect of a continuance implied some inconvenience to the district court and to doctor Duncan. Doctor Duncan was not a local witness. The postponement of the -20- 20 competency hearing from May 24 to May 25 had already required doctor Duncan to remain in Puerto Rico an additional day. "Nonetheless, the district court could have held the continuance [Soldevila] sought to one or two days. Indeed, the district court could have taken an active role in making sure the evaluation took place and quickly. Balanced against . . . [Soldevila's need for] a psychiatric evaluation, the inconvenience did not justify the denial." Pope, 841 F.2d at ____ 957. 4. Prejudice 4. Prejudice _________ In the present case, Soldevila was unable, without the continuance, to present witnesses of his own choosing that might have responded to doctor Duncan's new and serious charge that he was malingering. A defendant's due process right to a fair trial includes the right not to be tried, convicted or sentenced while incompetent. Drope v. Missouri, 420 U.S. 162, 172-73 (1975). _____ ________ Congress recognized and codified the right to a determination of mental competency to stand trial in the Comprehensive Crime Control Act of 1984, 18 U.S.C. 4241. This statute "permits motions to determine [the] competency [of a defendant] 'at any ______ time after the commencement of prosecution for an offense and ____ prior to the sentencing of the defendant . . . .'" United States _____________ v. Renfroe, 825 F.2d 763, 766 (3d Cir. 1987) (quoting 18 U.S.C. _______ 4241(a)) (emphasis added). Under 18 U.S.C. 4241(a), a court is required to hold a competency hearing: -21- 21 if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. United States v. Pryor, 960 F.2d 1, 2 (1st Cir. 1992). _____________ _____ In order to find a defendant competent to stand trial "it is not enough for the district court judge to find that the defendant is oriented to time and place and has some recollection of events." Dusky v. United States, 362 U.S. 402 (1960) _____ ______________ (internal quotations omitted). Instead, the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Id. (internal quotations omitted). ___ Soldevila's responses to Attorney Nogueras' questions and Soldevila's failure to make an allocution at sentencing suggested that Soldevila may not have had the constitutionally required "rational as well as factual understanding of the proceedings." Although doctor Duncan's report suggested that Soldevila was merely malingering, Soldevila was clearly prejudiced by his inability to present witnesses that could respond to doctor Duncan's report. 5. Conclusion 5. Conclusion __________ "We recognize that [Soldevila] might have exercised greater diligence than he did [and] [w]e do not intend to suggest that the degree of diligence demonstrated by [Soldevila] would -22- 22 necessarily be adequate under other circumstances." Flynt, 756 _____ F.2d at 1360. However, because Soldevila has a constitutional right not to be sentenced while incompetent and suffered prejudice as a result of the denial of his motion for a continuance and because a "continuance could have been brief enough to cause only minimal inconvenience, and would have been useful," we conclude that the court's denial of Soldevila's motion for a continuance was arbitrary and unreasonable. See ___ Pope, 841 F.2d at 958. We therefore find that the district court ____ abused its discretion in denying Soldevila's motion and finding Soldevila competent to be sentenced. We vacate Soldevila's sentence and remand this case for a full competency hearing and resentencing, if Soldevila is found competent to be sentenced. Vacated and remanded. ____________________ -23- 23