Martin CAREY, Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 94–1710.

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1994.

Decided March 22, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied April 13, 1995.

Judith Mizner, Newburyport, MA, with whom Marshall A. Stern, Bangor, ME, was on brief, for appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., and Richard W. Murphy, Asst. U.S. Atty., Portland, ME, were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Pursuant to 28 U.S.C. § 2255, petitioner Martin Carey ("Carey") moved to (1) vacate his guilty plea on the ground that he was taking prescription drugs at the time of his change of plea, and (2) set aside his sentence because of claimed ineffective assistance of counsel. A magistrate judge recommended denial of Carey's motion and, following *de novo* review, the district court agreed. We affirm. We discuss separately the two issues and the facts giving rise to them.

### DISCUSSION

**A. Voluntariness of Plea**

**1. Relevant Facts**

On August 2, 1990, Carey initially appeared and pled not guilty to a one-count indictment charging manufacture of marijuana. He was released on bail. On October 18, 1990, Carey and the government entered into a written agreement under which he would enter a plea of guilty conditioned on his right to appeal a previously denied motion to suppress.

On the same day, Carey and his retained counsel, Pasquale Perrino, appeared for the change-of-plea hearing. In a handwritten affidavit appended to his habeas motion, Carey states that, "[a]t the time I entered my change of plea, I was taking prescription drugs" to help deal with depression arising from the recent deaths of my daughter and father. Carey further states that: "I believe that these medications affected my judgment," and that, "[w]ithout them, I do not believe that I would have decided to change my plea at that time." Carey notes that, because of a drug test administered in August 1990, "pretrial services was aware that I was taking these medications." During the plea colloquy, the district court did not ask Carey about use of prescription medications.

**2. Discussion**

■ Summary dismissal of a § 2255 petition is appropriate if it plainly appears from the face of the motion that the movant is not entitled to relief. Rule 4(b) of the Rules Governing § 2255 Proceedings. While genuine issues of material fact may not be resolved without a hearing, a hearing is not required where a habeas motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). The court must take the allegations contained in the petitioner's motion as true, except to the extent that "they are contradicted by the record or are inherently incredible, and to the extent that they are merely conclusions rather than statements of fact." *Mack v. United States*, 635 F.2d 20, 26–27 (1st Cir. 1980).

■ "[T]he strictures of Rule 11 of the Federal Rules of Criminal Procedure ... are calculated to insure the voluntary and intelligent character of the plea." *United States v. Parra–Ibanez*, 936 F.2d 588, 590 (1st Cir. 1991). A plea will be set aside if a violation

of the rule implicates one of its "core concerns," *United States v. Allard,* 926 F.2d 1237, 1244 (1st Cir.1991), but variances not affecting substantial rights constitute harmless error, Fed.R.Crim.Proc. 11(h). We have never stated that the voluntariness requirement, indisputably a "core concern," *see, e.g., United States v. Cotal–Crespo,* 47 F.3d 1, 4 (1st Cir.1995), compels the district court to ask a defendant about prescription drug use, *see Parra–Ibanez,* 936 F.2d at 595. Nonetheless, many judges routinely inquire about alcohol or drug use during the Rule 11 colloquy. We have made clear that voluntariness does require that, once the court

> "has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights", ... [it] must broaden its Rule 11 inquiry with a view to assessing the impact of the ingested substances on the defendant's capacity to understand the change-of-plea process and intelligently determine a proper course of action.

*Id.* (quoting *United States v. Cole,* 813 F.2d 43, 46 (3d Cir.1987)).

Although the district court did not ask Carey directly about prescription drug use, our review of the transcript reveals nothing that even arguably suggests that the defendant was not in complete command of his faculties. *Cf. United States v. Pellerito,* 878 F.2d 1535, 1542 (1st Cir.1989) (mere fact defendant ingested potentially mood-altering medication insufficient to vitiate plea; there must be some evidence that the medication affected his rationality). Indeed, at one point Carey sought to correct the court's characterization of the plea. ("Q. Do you acknowledge you are in fact guilty as charged in this indictment? A. Conditionally, yes sir.")

▮▮ Nor do we agree with Carey that the court was put on constructive notice because pretrial services had the August 1990 drug-test results. As we have frequently observed, the district court is a busy place, *see, e.g., United States v. Panitz,* 907 F.2d 1267, 1273 (1st Cir.1990), and the Rule 11 strictures certainly do not diminish a judge's burdens, *see, e.g., United States v. Medina–Silverio,* 30 F.3d 1, 3 (1st Cir.1994). In this instance, we believe the protections in the Rule are sufficient without requiring a judge to search out all possibly relevant information contained in every government agency's files. The district court properly denied Carey's voluntariness claim. Assuming the facts in Carey's allegations as true, we nonetheless conclude that he is not entitled to relief, and his motion to vacate fails.

### B. Ineffective Assistance of Counsel

Carey premises his ineffective-assistance-of-counsel claim on the government's refusal to move for a downward departure pursuant to U.S.S.G. § 5K1.1[1] for substantial assistance and the government's opposition to a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. We find his arguments unpersuasive.[2]

### 1. Relevant Facts

On an unspecified date following the change-of-plea hearing, Carey and Perrino traveled to Portland, Maine, for a debriefing by the U.S. Drug Enforcement Administration ("DEA"). At this time, Perrino (Carey's counsel) also represented Joe Darling ("Darling"), who faced state charges relating to the same marijuana-growing operation that led to Carey's federal charges. On the way to Portland, Carey claims Perrino told him to "tell the government everything [he knew] but that there was no reason to mention Mr. Darling at all." Carey did not mention Darling at that debriefing. Several weeks later, at a second debriefing session with DEA immediately prior to his sentencing hearing, Carey did discuss Darling. Carey contends

---

**1.** U.S.S.G. § 5K1.1 in relevant part states:
Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

**2.** The magistrate's report considered Carey's ineffective-assistance-of-counsel claim in the context of vacating his guilty plea rather than sentencing. As we discuss below, Carey's motion alleges that ineffective assistance of counsel affected his sentencing and not his entry of plea.

that Perrino's conflict of interest led to his initial failure to disclose Darling's involvement, which in turn led to both the government's refusal to file a motion pursuant to Section 5K1.1 and to the government's opposition to a downward adjustment for acceptance of responsibility.

The district court conducted Carey's sentencing hearing on January 25, 1991. The presentence investigator appended to his report a memorandum entitled "Acceptance of Responsibility," which described an investigation undertaken by state authorities of a separate marijuana-growing operation. According to the memorandum, Carey actively participated in this operation, which took place over a period of about six weeks during the late summer and early fall of 1990 (that is, following his initial appearance but prior to his change-of-plea hearing). Darling was also involved in this operation. As to cooperation, the prosecutor stated at the sentencing hearing that the information Carey had provided to date was not significant, but that Carey pledged his future cooperation. The government did not file a section 5K1.1 motion. During his allocution, Carey stated, among other things, that "[t]here are no victims who will suffer long-term effects from this crime except my family." The court concluded that, based on Carey's post-charge conduct and his statement that there was no long-term victim from the crime, Carey "has not truly accepted responsibility for his conduct in this case, and that his effort at the ninth hour ... to cooperate with the government, is not capable of sufficient evaluation for the court to overcome the conclusion that is thereby yielded."

*2. Discussion*

■ To establish an ineffective-assistance-of-counsel claim, a defendant must demonstrate (1) that counsel fell below the applicable standard for performance, and (2) that prejudice resulted. *See, e.g., United States v. Fisher,* 3 F.3d 456, 463 (1st Cir.1993) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Carey argues that prejudice per se exists. Prejudice is legally presumed if "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980)). The conflict of interest must be actual or "real." *United States v. Fahey,* 769 F.2d 829, 834 (1st Cir.1985). To establish an actual conflict of interest, the defendant must show (1) the lawyer could have pursued a plausible alternative defense strategy or tactic, and (2) the alternative strategy or tactic was inherently in conflict with, or not undertaken, due to the attorney's other interests or loyalties. *United States v. Soldevila–Lopez,* 17 F.3d 480, 486 (1st Cir.1994). On this point, Carey's claim fails.

■ Carey's theory rests on a single factual allegation: that Perrino told Carey not to mention Darling in his initial debriefing. Carey argues that an actual conflict is "clear" because his best interests required "telling the government everything he knew about anybody or anyone, including Joseph Darling, at the outset" and, further, that defense counsel could have offered to have Carey testify against Darling. We think that the single fact of Perrino's statement is insufficient to establish that the counselled course of action was either "inherently in conflict or not undertaken due to" Perrino's other loyalties. *Id.* In fact, Carey's best interests could have dictated precisely the course suggested by Perrino. For example, inasmuch as state authorities already knew of Darling's activities, any proffer by Carey would be unlikely to impress his debriefers but could potentially antagonize Darling into divulging more about Carey. Furthermore, because both Carey and Darling were involved in the post-appearance growing operation, it might well have been in Carey's interest to have heeded Perrino's advice. To be sure, all this is speculation, but so is Carey's conclusory suggestion that Perrino breached his duty of loyalty. Carey must show more. In actual-conflict cases, we have repeatedly stated that the defendant must demonstrate that the alleged conflict is more than "some attenuated hypothesis having little consequence to the adequacy of representation." *Brien v. United States,* 695 F.2d 10, 15 (1st Cir.1982)

(citing *United States v. Martorano*, 620 F.2d 912, 916 (1st Cir.1980)). Even when accepted as true and read in its most friendly light, the single factual allegation offered by Carey does not surpass this hurdle. Accordingly, because no actual conflict of interest existed, we conclude that prejudice cannot be legally presumed.

■ One step remains in our analysis. Assuming that Perrino's advice fell short of *Strickland*'s first prong, we still must determine whether prejudice in fact resulted. We conclude that it did not. To establish prejudice, a defendant must demonstrate that there was a reasonable probability that, but for counsel's errors, the result in the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice incorporates more than outcome determination; we also must determine whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, ── U.S. ──, ──, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *see also Scarpa v. Dubois*, 38 F.3d 1, 12 (1st Cir.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995). We conclude that absent Perrino's statement, the outcome in this case would be no different. By its terms, section 5K1.1 vests in the government full discretion to file a substantial-assistance motion, subject to review only if the refusal to file was based on an unconstitutional motive.[3] *Wade v. United States*, 504 U.S. 181, 184–87, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). The record allows us to conclude with near certainty that, even if Carey had discussed Darling at the initial debriefing, any information about Darling would not have changed the government's ultimate determination that Carey's assistance was "not significant." At least three facts support this conclusion. First, at the time of the initial debriefing, state authorities already knew that Darling was involved with drugs. Second, although Carey did freely discuss Darling at his second debriefing, the government was apparently unimpressed with whatever information Carey provided.

Third, in its response to Carey's objections to the magistrate's report, the government makes clear that if Carey were ordered to be resentenced, it would not move for a downward departure because, at that point, "substantial assistance [could not] be rendered and [could] never be rendered."

Finally, upon careful review of the record, we detect no evidence even arguably suggesting that Carey's sentencing was either unfair or unreliable. Accordingly, we conclude that Carey suffered no prejudice and, thus, his ineffective-assistance-of-counsel claim fails.

### CONCLUSION

For the foregoing reasons, the decision of the district court is

*affirmed.*

BOWNES, Senior Circuit Judge, dissenting in part:

I fully agree that there was no error in the failure to hold an evidentiary hearing on Carey's claim that the voluntariness of his plea was compromised by his ingestion of prescription medications prior to the change of plea hearing. I disagree, however, that the district court permissibly rejected Carey's conflict of interest claim without an evidentiary hearing. For this reason, I respectfully dissent from Part B of the majority opinion.

### I.

At the outset, I think it important to state some bedrock legal tenets. First, "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Second, the right to effective assistance of counsel is *always* denied where an actual conflict of interest negatively affects a lawyer's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (1980). In other words, an actual conflict of interest is a special breed of ineffective assistance

---

**3.** Carey did not enter into an agreement under which the government would be bound to seek a downward departure.

which is never harmless and is presumptively prejudicial. *Id.* at 349–50, 100 S.Ct. at 1718–19. And third, the right to effective assistance of counsel applies at the sentencing stage of a felony case. *See Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967).

I recognize that the standard by which effectiveness ordinarily is judged *may* be more lax at the sentencing stage of a noncapital case than it is at trial. *Cf. Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (leaving open the question whether *Strickland*'s effectiveness definition should apply to counsel's performance at "an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance").[4] There can be no doubt, however, that a lawyer whose performance at sentencing was compromised by an actual conflict of interest has not rendered the client the effective assistance of counsel mandated by the Constitution. *See United States v. Swartz,* 975 F.2d 1042, 1048 (4th Cir.1992) (applying *Cuyler* at the sentencing stage); *United States v. Ziegenhagen,* 890 F.2d 937, 939–41 (7th Cir.1989) (same); *see also United States v. Green,* 680 F.2d 183, 191–205 (D.C.Cir. 1982) (Bazelon, J., dissenting), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983).

## II.

In light of the foregoing authority, it is clear that the appropriate inquiry here simply is whether Carey's *allegation* is sufficient to *state a claim* that his lawyer had an actual conflict of interest. As the majority concedes, under 28 U.S.C. § 2255, a petitioner is entitled to an evidentiary hearing "[u]nless

the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." Thus, a petition can be dismissed without a hearing *only* if the petitioner's allegations, if credited, would *not* entitle the petitioner to relief, or "if the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Rodriguez Rodriguez,* 929 F.2d 747, 751 (1st Cir.1991); *see also Dziurgot, v. Luther,* 897 F.2d 1222, 1225 (1st Cir.1990); *Mack v. United States,* 635 F.2d 20, 26–27 (1st Cir.1980).

Here, Carey's allegation that his lawyer told him not to tell the government about Darling is not contradicted by the record, inherently incredible, conclusory, or unremediable. Moreover, if true, it might well be sufficient to satisfy the two-pronged test for establishing an actual conflict of interest: (1) that counsel "actively represented conflicting interests"; and (2) that "an actual conflict of interest adversely affected his lawyer's performance." *See Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1719.[5] The majority speculates that "Carey's best interests *could* have dictated precisely the course suggested by Perrino." *See* opinion at 1100 (emphasis supplied). Perhaps, but we cannot know without an evidentiary hearing at which Perrino could either deny the allegation or explain his action. After all, the inference that Carey would have us draw from his petition—that Perrino's advice was motivated by loyalty to Darling and could well have harmed him at sentencing—is just as plausible as the majority's speculation. I think the law required the district court to hold a hearing and to resolve these questions.

## III.

After concluding that Carey does not state an actual conflict of counsel claim, the major-

---

4. *Strickland,* of course, predated the Sentencing Guidelines. Federal sentencing proceedings today can hardly be described, in the words of *Strickland,* as either "informal" or as governed by a sentencer with "standardless discretion." 466 U.S. at 686, 104 S.Ct. at 2063.

   It must also be noted that despite the above-quoted dictum, we have applied the *Strickland* effectiveness standard at sentencing. *See Carsetti v. Maine,* 932 F.2d 1007, 1012–14 (1st Cir.1991).

5. It should be borne in mind that *Cuyler*'s "adversity" requirement is *not* tantamount to a showing of harm or prejudice; *Cuyler* makes very clear that a defendant victimized by a lawyer with dual loyalties need not show harm or prejudice. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19. For this reason, adversity must be construed as any action taken by a lawyer which was prompted by the lawyer's loyalty to some other party and which was not in the complaining client's interest.

ity states that it "still must determine whether prejudice in fact resulted." *See* opinion at 1101. It does not need to engage, and should not have engaged, in this analysis. If, on the one hand, Carey's allegation is insufficient to state an actual conflict claim (as the majority holds), there is no viable claim of ineffective assistance of counsel, and the prejudice analysis is entirely superfluous. If, on the other, Carey's allegation is sufficient to state an actual conflict claim (as I maintain), the prejudice analysis is patently improper. The majority in *Cuyler* could not have been clearer: "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–50, 100 S.Ct. at 1719.

#### IV.

Even were I to ignore *Cuyler* and deem Carey's claim as being properly subject to a prejudice analysis, I could not agree that there was no prejudice here. Hoisting Carey by the petard of an assertion *Cuyler* did not require him to make, the majority confines its prejudice inquiry to the harm emphasized by Carey in his motion (that his failure to talk about Darling at the initial debriefing resulted in the absence of a § 5K1.1 motion at his sentencing) and determines "with near certainty that, even if Carey had discussed Darling at the initial debriefing, any information about Darling would not have changed the government's ultimate determination that Carey's assistance was 'not significant.'" *See* opinion at 1101.

I have two problems with this determination. First, I am loath to decide what the government would or would not have done in this case without sworn testimony tested by adversarial questioning. And more importantly, even if I could conclude that Carey would not have received a § 5K1.1 motion at his initial sentencing, I cannot say that Carey was not harmed in some other way if his lawyer was disloyal. In this vein, I point out that Carey could come out of a second sentencing with a lower sentence than the one he currently is serving. Carey's guideline range was 97–121 months, and he received a sentence of 109 months. Thus, regardless of whether there was a § 5K1.1 motion, if the district court found that Carey had received

ineffective assistance of counsel in connection with his first sentencing, it would in no way be engaging in an empty exercise by setting Carey's sentence aside and ordering a second sentencing hearing. It is not at all far-fetched to assume that a lawyer completely loyal to Carey might be able to persuade the judge to sentence him at the lower end of the appropriate guideline range.

The majority concludes its prejudice analysis by stating that it does not "detect any evidence even arguably suggesting that Carey's sentencing was either unfair or unreliable." *Id.* at 1101. While I don't disagree with this statement, I hardly find it surprising; there was no evidentiary hearing at which such evidence might have been developed. That is the main point of my dissent.

#### V.

Binding Supreme Court and Circuit precedent prohibited the district court from rejecting Carey's conflict of interest claim without an evidentiary hearing. I therefore dissent from Part B of the majority opinion, which affirms the denial of Carey's claim without a hearing.