# United States Court of Appeals
## For the First Circuit

Nos. 17-1127, 17-1128

UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL TIRADO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Benjamin L. Falkner, with whom Krasnoo, Klehm & Falkner LLP was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom John J. Farley, Acting United States Attorney, was on brief, for appellee.

May 9, 2018

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.    The defendant, Manuel Tirado, pleaded guilty and stands convicted of drug offenses, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 846, and failure to appear for arraignment, 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(i).   He appeals from the judgments of conviction on Sixth Amendment grounds, contending that his counsel suffered from a conflict of interest arising from violation of attorney-client privilege and a local rule of professional conduct in particular.   We affirm.

After his indictment on the drug charges by the New Hampshire federal grand jury, the defendant was arrested in New York, where he was released on bail and ordered to appear before the district court in New Hampshire at a date and time specified.   He got in touch with a Rhode Island lawyer not admitted to practice in New Hampshire, Jeffrey Pine, whom he wished to represent him.   According to Mr. Pine's unchallenged account of events on the arraignment day, the defendant came to the New Hampshire courthouse in the company of relations and friends, including someone acting as an English-Spanish interpreter, and met Mr. Pine near the courthouse.   When he asked Mr. Pine whether he thought the court would order him committed pending trial, the lawyer said he couldn't guarantee otherwise, but the proper course would be to appear at the hearing as scheduled.   A very short time later, the arraignment

proceeding began, and although Mr. Pine and the defendant's local counsel were present, the defendant was not.

When the court asked if anyone knew where the defendant was, Mr. Pine described their recent conversation in the company of the relations and friends, including the defendant's question about commitment and the lawyer's responsive advice. Some time later, the defendant was arrested, and the arraignment was held. When local counsel filed a motion to admit Mr. Pine pro hac vice, the Government requested the court to conduct a hearing on the motion, on the ground that it might call Mr. Pine as a prosecution witness to prove the charge of failing to appear. The next step came when all parties filed a stipulation that the defendant himself had signed, stating as fact the substance of what Mr. Pine had told the court at the uncompleted arraignment hearing, with the exception of the defendant's question about commitment and the lawyer's answer.

At a subsequent hearing for change of pleas to guilty, counsel for the Government explained that the stipulation then on record was meant to remove any risk that Mr. Pine might be called as a Government witness, since the defendant wished to continue with Mr. Pine as principal counsel. Local defense counsel agreed that the stipulation accomplished that object, and the court indicated that there was no longer any risk of a conflict on Mr. Pine's part at the trial stage. The court

reprised this colloquy at the later sentencing hearing and was careful to advise the defendant that he was entitled to representation free of conflict, offering to appoint new counsel at public expense if the defendant wished to discharge Mr. Pine for any reason. The defendant declined the offer and maintained that he desired Mr. Pine to continue to represent him. The hearing then continued, sentences were imposed, and the defendant was committed.

A defendant, like Tirado, "who raised no objection at trial[,] must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). "[I]n order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994).

We find no merit in the defendant's new position claiming inadequate representation owing to a conflict of loyalties stemming from Mr. Pine's response to the court and an allegedly consequent need to protect himself from disciplinary action for supposedly violating attorney-client privilege and the local professional conduct rule. There was, to begin with,

no breach of New Hampshire Rule of Professional Conduct 1.6, which generally forbids "reveal[ing] information relating to the representation of a client."  However the terms of that rule might cover Mr. Pine's response to the court, it is preempted by New Hampshire Rule of Professional Conduct 3.3(b) and (d), which obligate counsel "in an adjudicative proceeding[,] . . . who knows that a person . . . has engaged in criminal or fraudulent conduct related to the proceeding[,] [to] take reasonable remedial measures, including, if necessary, disclosure to the tribunal," even when information disclosed would "otherwise [be] protected by Rule 1.6."  Since the defendant's evident truancy from the arraignment he had been ordered to attend was a criminal violation, see 18 U.S.C. § 3146(a)(1), Mr. Pine's response to the court was obligatory under Rule 3.3(d).

We reach the same conclusion in otherwise seeing no breach of the attorney-client privilege in repeating the conversation, whatever its content might be, simply because the conversation outside the courthouse apparently occurred in the personal, not professional, company of others, the relations and friends.  The accuracy of Mr. Pine's description of these other parties as having been present at the discussion has never been challenged.  The consequence is that when speaking with them present, the defendant could not assume that his words were privileged statements to his lawyer, and thus no right to

preserve privilege could attach. Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) (the privilege "ceases . . . when otherwise privileged communications are disclosed to a third party"); see also United States v. Evans, 113 F.3d 1457, 1467-68 (7th Cir. 1997) (presence of friend and potential character witness vitiated the privilege). While we do not understand that the need for the presence of an interpreter implicated the rule in these cases, United States v. Massa. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997), the whole assemblage was not an interpreter.

A further line of reasoning confirms our rejection of the defendant's current position: the record is devoid of any indication that in the district court anyone suggested that Mr. Pine's answer to the judge violated his duty to the defendant and raised a potential for conflict on the part of counsel. It was not the pure disclosure to the court but the specter of his being called as a Government witness at trial that was raised as an issue of conflict, and any such conflict would only occur in the future. The absence in the district court of any accusation of other actual or possible impropriety means that the defendant can be entitled to relief on the ground he raises only if he can demonstrate that "an actual conflict of interest adversely affected [Mr. Pine's] performance." Cuyler, 446 U.S. at 348.

The defendant has done no such thing and, for reasons already given, cannot do so.

And quite independently of the <u>Cuyler</u> and <u>Soldevila-Lopez</u> rules, any conceivable resulting tension in the lawyer's mind between client loyalty and professional self-preservation would have been answered by the stipulation joined and repeatedly avowed by the defendant. The court's conversation with the defendant, and assurance that new counsel could be appointed to eliminate any conflict with his lawyer's obligation to him as trial counsel, demonstrated that the defendant understood his rights and the consequences of proceeding as he chose to do.

<u>Affirmed</u>.