UNITED STATES of America, Plaintiff,

v.

**Jose GONZALEZ–FLORIDO a/k/a Papo and Reina Marbella Baptista de Capobianco, Defendants.**

No. 97–0139CCC.

United States District Court,
D. Puerto Rico.

Sept. 25, 1997.

Order Denying Reconsideration
Nov. 12, 1997.

Guillermo Gil, U.S. Attorney, Jorge E. Vega–Pacheco, Asst. U.S. Atty., Warren Vásquez, Asst. U.S. Atty., for Plaintiff.

Esther Castro–Schmidt, Tintillo Gardens, Bayamon, PR, for Defendants.

## ORDER

CEREZO, Chief Judge.

The Court has before it an Informative Motion and Request for Hearing filed by defendant González–Florido on August 20, 1997 (docket entry 20). The motion describes a situation confronted by defendant's counsel, Ms. Esther Castro–Schmidt, a former Assistant U.S. Attorney who participated as prosecutor in the presentation of evidence before the Grand Jury in 1991 against the person who is now her client. Defense attorney Castro–Schmidt narrates in her motion that the government attorney in charge of this case requested that she withdraw because of her prior involvement in the 1991 indictment against the defendant. The motion was referred to the Magistrate–Judge for hearing, which was held on August 26, 1997; a report and recommendation was filed the next date (docket entry 25), and a motion requesting adoption of the report, yet noting exception to the Magistrate–Judge's findings, was filed on September 11, 1997 by the United States (docket entry 28).

Magistrate–Judge Arenas specifically found that the prior 1991 conviction of the defendant and attorney Castro–Schmidt's participation in that case do not trigger the conflict of interest criminal statute, 18 U.S.C. § 207(a), or the Rules of Professional Responsibility. Confronted, however, with what he described as "the definite probability and definite threat of criminal prosecution of defense counsel," he, nonetheless, recommended that the Court allow defendant González–Florido to release his chosen counsel and grant a period of time to retain another attorney. In that same report and recommendation, the Magistrate–Judge informed

that defendant reluctantly opted to attempt to obtain the services of another attorney and that "his only reason to do so was because of his concern for the probable prosecution of his attorney." Report and Recommendation, docket entry 25, at p. 8. This decision was made after the Magistrate–Judge told defendant that the government's attorney believed Ms. Castro–Schmidt had a serious conflict, that they were very serious about this, and that they were "going to continue to investigate this matter to the point where they might file charges against her." Transcript of Hearing held before the Magistrate–Judge, docket entry 26, p. 5, lines 16–20. He was advised on several occasions by the Magistrate–Judge that he had the right to have adequate representation of counsel, which meant an attorney focused only on defendant's problems and one who does not have an independent problem of her own.

The involuntariness of defendant's renouncing the counsel of his choice is manifest in the following statement:

MR. GONZALEZ: I have come to a decision that I will find ... try and find another attorney because I don't want ... I feel ... I really feel in the back of mind I dont's have much of a choice.

Because I don't want anything to ... the possibility of something happening to Mrs. Castro. I'll just have to go and find another one.

Transcript, docket entry 26, p. 22 at lines 2–8.

It is unfortunate that the defendant was brought at that stage into the discussion of the matter referred to the Magistrate–Judge. Granted that the defendant had to be advised of the concerns held by the Magistrate–Judge at some point, but certainly those concerns had to be addressed independently of and separate from the matter at issue, to wit, whether Ms. Castro–Schmidt should be disqualified as a potential violator of a criminal statute. Turning to the merits of the government's position—that the defense attorney will incur in conduct prohibited by 18 U.S.C. 207(a) and by Rule 1.11 of the Rules of Professional Responsibility adopted by this Court if allowed to participate in this

criminal case—the Court FINDS, as did the Magistrate–Judge, that neither the Rules of Professional Responsibility nor section 207(a) are applicable to Ms. Castro–Schmidt in the circumstances surrounding the discharge of her duties in the present case. Both the Rule and the statute apply to a former government attorney who represents persons in connection with a matter in which that attorney participated personally and substantially as an officer or government employee. Aside from the fact that the government has not even hinted that Ms. Castro–Schmidt's appearance in this 1997 case is "knowingly" made "with the intent to influence," as required by section 207, the common element required by both this section and Rule 1.11 that the appearance be in connection with a matter in which she had participated personally and substantially as a public officer or employee, is simply lacking. This 1997 criminal proceeding in which Ms. Castro–Schmidt appears as defense counsel has nothing to do with the 1991 criminal matter in which she participated personally and substantially as an Assistant U.S. Attorney. Her circumstances are different from those present in *U.S. v. López*, 71 F.3d 954, 963 (1st Cir.1995), where an Assistant U.S. Attorney, after being personally involved in the Grand Jury investigation of López, then began representing him in dealing with that **same** investigation. The element spelled out in section 207(a)(I)(B) is clearly present in such a situation.

In the present case, but for the fact that defendant's prior conviction may be raised at trial pursuant to Rule 609 of the Federal Rules of Evidence, there is no other connection between her appearance as defense counsel in this case and her appearance before the grand jury in the matter of the 1991 indictment of defendant González–Florido. That circumstance alone does not convert the **present** criminal case in which Ms. Castro–Schmidt appears as a matter in which she participated personally and substantially *as an* officer or government employee.

The government raises the possibility of a request for revocation of the defendant's supervised release in the 1991 case. If the person who represents defendant in such revocation proceeding is involved in a conflict of interest situation, that is for the Court to decide in that particular case. It would seem obvious that as to a revocation proceeding in the 1991 case, Ms. Castro–Schmidt would place herself in a situation of possible violation of section 207(a) and Rule 1.11 if she should appear as releasee's attorney. In any event, that is a matter to be raised in that case; it is not an argument in favor of her disqualification in this 1997 case.

Accordingly, the Court FINDS that there is no reason to disqualify Ms. Castro–Schmidt as defense attorney of Mr. González–Florido nor is there justification to order *him*, or convince him, to choose someone other than her. The fact found by the U.S. Magistrate Judge in the sense that Ms. Castro–Schmidt was actually threatened with criminal prosecution for violation of 18 U.S.C. Section 207(a) unless she withdrew from the case treads perilously close to a violation of an accused's Sixth Amendment right to counsel. The government should have raised its concerns and its request before the Court instead of exercising the overpowering force of threatening her with criminal charges. The United States can use a sword, never a bludgeon, in exercising its responsibilities.

Ms. Castro–Schmidt will remain as defendant González–Florido's attorney, unless, after receiving copy of this Order and after they privately discuss the matter, defendant voluntarily decides that it is in his best interest to retain another counsel. Defendant and Ms. Castro–Schmidt are GRANTED a term of ten (10) days after notice of this Order to discuss the matter and inform the Court if he wishes to continue represented by her, or if he seeks an extension of time to retain another counsel.

SO ORDERED.

**ORDER**

The Court has before it the Motion for Reconsideration filed by the United States of America on October 9, 1997 **(docket entry 31)** addressing the Order of September 25, 1997 **(docket entry 29)** in which the Court determined that defense attorney Castro–Schmidt will remain in the case·unless defendant José González–Florido voluntarily de-

cided, after receiving copy of the order and privately discussing the matter, whether it was in his best interest to retain new counsel. The defendant replied to said motion on October 7, 1997 **(docket entry 35)**.

Attached to the Motion for Reconsideration are three unsworn declarations under penalty of perjury of U.S. Attorney Guillermo Gil, Assistant U.S. Attorney Jorge E. Vega–Pacheco, Chief of the Criminal Division, and Assistant U.S. Attorney Warren Vázquez. Mr. Gil's declaration affirms that he discussed with Ms. Castro–Schmidt over the telephone the issue of her representation in an attempt to dissuade her from continuing the same but that he never threatened nor does he intend to prosecute attorney Castro–Schmidt for continuing her representation of defendant González–Florido. A.U.S.A. Vázquez, in charge of the case, states that he "suggested to counsel Castro that she should consider from continuing(sic) her representation in the abovementioned case." Both Assistant U.S. Attorneys Vázquez and Vega–Pacheco declared under penalty of perjury that in the course of their duties they "attended a hearing before Magistrate Judge Justo Arenas wherein the issue of the continued representation of Mr. González Florido was argued" and "[t]hat neither in the in chambers conference nor at any time, have I ever threatened to prosecute attorney Castro for her continued representation of Mr. González Florido."

In the request to reconsider the United States addresses the "unfortunate fact ... that the prosecutors did not object when the Magistrate Judge entered on the subject about the U.S. Attorney filing charges against her." Docket entry 31, at p. 5. The reasons given for not objecting was that "Ms. Castro had alleged that she felt threatened during an in-chamber conference held with the Magistrate Judge prior to the hearing." *Id.*

Aside from the denials of the threat of prosecution, the United States again contends that the 1991 criminal proceeding including defendant González–Florido and Ms. Castro–Schmidt as the Assistant U.S. Attorney who handled the indictment phase is relevant to the point of raising a potential

serious conflict of interest if the prior González–Florido conviction was introduced in this trial as Rule 404(b) evidence. It also argues that, if defendant testified, the prior conviction could be admissible in rebuttal and poses the question of what would happen if defendant mentioned "that he was guilty in the first case where attorney Castro–Schmidt indicted him, but innocent on (sic) this one where she is defending him." Docket entry 31, at pp. 3–4. The government expresses that such a situation is "of a very unsettling nature" and creates an appearance of impropriety. *Id.*, at p. 4.

Defendant González–Florido's counsel addressed each of the matters raised in the request for reconsideration. She specifically refers to the August 26, 1997 appearance before Magistrate Judge Arenas and the verbal communication with U.S. Attorney Gil. At pages 3 & 4 of the reply, attorney Castro–Schmidt mentions that during the conference with Magistrate Judge Arenas, in chambers and in the presence of Assistant U.S. Attorneys Vega–Pacheco and Warren Vázquez, she narrated a chronology of the events which prompted her to request a hearing. As one of these events, she points out a telephone call from U.S. Attorney Gil in which he "stated that because of the affection he had for the undersigned, he was warning her to get out of the case or else he would be obligated to file charges against her pursuant to 18 U.S.C. § 207(a)" and that "[h]e invited the undersigned to review that criminal statute and to withdraw as soon as possible." She claims that at no time during her recital of these events did they deny them and that when the Magistrate Judge directly asked Assistant U.S. Attorney Vega–Pacheco whether his office was serious about pursuing this matter against her he confirmed that his office was very serious about it.

The three attorneys who signed the request for reconsideration, U.S. Attorney Gil and Assistant U.S. Attorneys Vega Pacheco and Vázquez, affirm that the Court is fully cognizant of the manner and conduct which they have exhibited before it as well as in other case related matters for many years. This statement is a claim of credibility which the Court, notwithstanding their ethical con-

duct through the years, cannot utilize to resolve the matters before it. As it does in any controversy, the Court must look to the particular circumstances relevant to Its determinations and in these particular circumstances it does not help at all to pit the credibility of prosecutors in office against that of a defense attorney. The same claim of credibility can be legitimately made by attorney Castro–Schmidt before this Court in consideration of her ethical conduct as a former prosecutor and as a criminal defense attorney. Therefore, we shall analyze objectively the data before the Court to resolve that aspect of the reconsideration request which addresses the Court's determination that "[t] he fact found by the U.S. Magistrate–Judge in the sense that Ms. Castro–Schmidt was actually threatened with criminal prosecution for violation of 18 U.S.C. § 207(a) unless she withdrew from the case treads perilously close to a violation of an accused's Sixth Amendment right to counsel." Docket entry 29, at pp. 4–5.

A review of the transcript of the August 26, 1997 hearing before the Magistrate–Judge (**docket entry 27**), attended by defense counsel and Assistant U.S. Attorneys Vega–Pacheco and Vázquez, reflects that Magistrate–Judge Arenas advised the parties to interrupt if anyone disagreed with his narrative. At the commencement of that hearing, he stated: "This is what's happening and I'll go through this historically and if anyone disagrees with my relation of the facts then you're free to interrupt." Tr., at p. 2, lines 20–22. Addressing the defendant, he clearly referred to defendant's right to have adequate representation of counsel, which was explained to defendant as having an attorney focused only on his problems and not on her own independent problems during the case. See Tr., at pp 4, 8. Observing that the independent problem might affect the outcome of the case, the Magistrate Judge then said he was "going to be very specific. . . ." Tr. p. 4, line 24. The dialogue which followed Immediately thereafter at pages 4 through 6 of the transcript makes it abundantly clear that Ms. Castro–Schmidt was subject to an investigation and the filing of charges. The following excerpts are relevant:

THE COURT: It might affect the outcome of the case and I'm going to be very specific. In this case the United States feels that Ms. Castro has a serious conflict of interest problem and the Assistant U.S. Attorney thinks that there's an ethical problem and possibly a legal problem in representing you.

Tr. at pp. 4–5, lines 23–3.

And the Assistant U.S. Attorneys are very serious about this. They think that Ms. Castro has a conflict here, a serious conflict, and they're going to continue to investigate this matter to the point where they might file charges against her. That's how serious it is in their respect for Ms. Castro. I mean, it's very serious for her also, because she has a conflict. She wants to represent you. You have a right to adequate representation of counsel. At the same time she has what any normal person would have. A concern that she is going to be charged or at the very least investigated for doing what she feels she has to do when she's representing you.

Tr. at pp. 5–6, lines 14–2.

There are one or two alternatives in my recommendation. I either recommend that the case proceed with Ms. Castro representing you or I recommend that you be required to contract the services of another attorney. I could do one of two things. I've read the law and we talked in chambers, at length, and part of that conversation is going to be put on this record and I'll probably be recommending that she continue with the case. That does not solve the problem, though, you see? This is another problem and you have to be aware of this. That your attorney is going to have this concern as the case goes on. That she might . . . I mean, the United States might file charges against her. Might not file charges against her but this is her concern.

Tr. at p. 6, lines 6–21.

You can talk to your attorney. Whether or not you're going to continue with Ms.

Castro or whether or not you're going to contract the services of another attorney.

Tr. at p. 16, lines 3–5.

MR. GONZALEZ: So, I really feel that I don't have a choice, in the sense that I don't want her to ... to possibly face being incarcerated or face a trial or something like that, a prosecution, for representing me. I want her to represent me but I cannot ask that of anybody. I mean, that she be willing to face or go to prison for representing me.

Tr. at pp. 16–17, lines 23–4.

Because I don't want anything to ... the possibility of something happening to Mrs. Castro. I'll just have to go and find another one.

Tr. at p. 22, lines 6–8.

It is manifest that the concern of the Magistrate Judge and the defendant himself over the possibility of defense attorney Castro–Schmidt being criminally prosecuted because of her participation in this case was a key consideration at that hearing.

On August 27, 1997, a report and recommendation was filed (**docket entry 25**) where the Magistrate Judge makes three definite statements concerning the risk of Ms. Castro–Schmidt being criminally prosecuted. The following excerpts demonstrate it:

Because of the importance of the 1991 conviction in the implementation of the enhanced penalty and the possible reference to that case at trial, and because of attorney Castro–Schmidt's substantial participation in the 1991 case, the United States feels very strongly that attorney Castro–Schmidt should disqualify herself, **to the point of threatening her with federal prosecution under Chapter 11 of Title 18, United States Code.**

Report and Recommendation, docket entry 25, at p. 7, lines 15–21 (emphasis ours).

I explained the above scenario to the defendant and after an exchange with me and after discussing the matter with attorney Castro Schmidt, he opted, **reluctantly,** to attempt to secure the services of another attorney. He was informed that he had a right to conflict-free representation, and that while my reading of the pertinent

statutes showed nothing improper with attorney Castro Schmidt's actions, the conflict of his attorney's representing him at the expense **of probable prosecution might be a matter which he would be precluded from raising on appeal or subsequent collateral attack. His primary, indeed, his only reason to do so was because of his concern for the probable prosecution of his attorney. Attorney Castro Schmidt did not move to be relieved from representation.**

Report and Recommendation, p. 8, lines 3–13 (emphasis ours).

**The definite probability and definite threat of criminal prosecution of defense counsel, by indictment or information, together with the probable newsworthiness of this item, and the damage to defense counsel's reputation, regardless of ultimate outcome, at very least have a chilling effect upon adequate representation.** *Cf. Carey v. United States,* 50 F.3d 1097, 1102 (1st. Cir.1995) (Bownes, S.J., dissenting) (lawyer's performance at sentence compromised.) While there is no motion of defense counsel to withdraw pending, and neither there is a motion of the United States seeking recusal of defense counsel, **the threat of an attorney's prosecution is deemed sufficient to raise a Sixth Amendment issue, as it was more fully raised yesterday at the hearing.**

Report and Recommendation, p. 10, lines 4–14. (Emphasis ours.)

This Report and Recommendation was followed by a motion of the United States requesting adoption of the Magistrate Judge's final determination, yet noting exceptions to particular findings made by him (docket entry 28). Nowhere in that motion does the United States disavow the situation, affirmed by the Magistrate Judge as a foregone conclusion, that Ms. Castro–Schmidt was confronting "[t]he definite probability and definite threat of criminal prosecution ... by indictment or information...." *Id.* More importantly, the United States requests the adoption of the Magistrate Judge's final determination which was simply that defendant González–Florido be allowed to release de-

fense counsel from further representing him. That recommendation was strictly based on the chilling effect upon adequate representation that "the definite probability and definite threat of criminal prosecution of defense counsel by indictment or information" could produce. It is hard to understand how the United States could seek adoption of that final determination which, according to the declaration under penalty of perjury, was based upon the false representation of defense counsel or the incorrect interpretation by the Magistrate Judge that she was indeed threatened with criminal charges. This is troubling. If Ms. Castro–Schmidt was never threatened in such manner, if the government did not object at the hearing to the repeated assertions of the Magistrate Judge that she actually was and if the inaction was due solely to an unfortunate judgment call at the time, how can one explain that sixteen days after Assistant U.S. Attorneys Vega–Pacheco and Vázquez' appearance before the Magistrate Judge, specifically on September 11, 1997 when it filed the motion to adopt, the government still remained silent and never once challenged the Magistrate Judge's comments and conclusions on the threat of prosecution which led him to persuade defendant, against defendant's expressed choice, to change counsel?

This was too sensitive a matter involving not only defendant's Sixth Amendment right to counsel of his choice but also the criminal defense bar's right to be free from intimidation and, ultimately, the recognition that the Court is **the** fiduciary of the public trust. The ex-parte approach to defense counsel before the hearing is reprehensible. Although now characterized as an attempt to amicably resolve an alleged conflict of interest, subsequent developments reflect that it was more an imposition than a friendly advice. Once the Magistrate Judge repeatedly raised the threat of criminal prosecution during the hearing and in his written report, the prosecutors' silence reeks of willful disregard of a matter which any reasonable person would expect the government to address immediately. The denials on reconsideration are too late and too unconvincing, given that the same officers of the Court who now deny having menaced with charges were the same

who first heard and later read the Magistrate Judge's clear determination that they had threatened defendant's attorney with indictment if she remained in the case.

As to the remaining arguments in support of reconsideration, the possibility of the prior conviction as Rule 404(b) evidence can only be raised, if at all, as a remote hypothetical. There is no indication by the government in support of such use of a prior conviction that the 1991 crime falls within any of the exceptions recognized by Federal Rule of Evidence 404(b). Bringing an unrelated drug conviction into this case without any justification of its need is against the prohibition of Rule 404(b) and the case law that interprets it.

The government poses the following question at page 3 of its motion for reconsideration: "what would be the case if the defendant, while testifying, mentions that he was guilty in the first case where attorney Castro–Schmidt indicted him, but innocent on this one where she is defending him?" The common denominator in both cases, an indicting prosecutor in an unrelated case now acting as defense counsel, neither detracts from the weight of his prior conviction nor from his claim of innocence in this case.

Section 207(a) of Tide 18 of the United States Code requires, as stated in our earlier order, "that the appearance be in connection with a matter in which [Ms. Castro–Schmidt] had participated personally and substantially as a public officer or employee." Docket entry 29, at p. 3. We once again conclude that this 1997 case in which Ms. Castro–Schmidt appears as defense attorney for Mr. González–Florido has nothing to do with the 1991 criminal matter in which she participated as the prosecutor before the indicting grand jury. Her participation in the 1991 criminal case was indeed substantial as an Assistant U.S. Attorney, but that investigation in that case has no connection to this one. The statutory interpretation advanced by the government is mistaken. We distinguished this case before from that of *U.S. v. López*, 71 F.3d 954, 963 (1st Cir.1995), where an Assistant U.S. Attorney after being personally involved as a prosecutor in the grand jury investigation of López, later assisted him as a

**694**

defense attorney in private practice in matters dealing with that same Investigation before his formal indictment. That, of course, is conduct prohibited by 18 U.S.C. § 207(a) and by Rule 1.11 of the Rules of Professional Responsibility adopted by this Court. The examples given by the United States at page 5 of its motion addressing the Magistrate Judge's report and recommendation (docket entry 28), specifically in the case of *U.S. v. Flor de Maria Cacho,* Criminal No. 97–145(DRD), is another such violation of section 207(a). Again, what the United States has not realized is that what precluded the former prosecutor turned defense counsel from further representing the defendant was the nexus between his investigation in the case as a prosecutor and his later participation as a defense advocate in a same set of facts.

For the reasons stated, the Motion for Reconsideration of Order filed by the United States on October 9, 1997 **(docket entry 31)** is DENIED. Since reconsideration of the order allowing defense counsel Esther Castro–Schmidt to remain as defendant González–Florido's attorney was requested at the time that the ten (10) day period provided for defendant to inform the Court if he wished to continue being represented by attorney Castro–Schmidt expired, defendant González–Florido shall, within the final term of three (3) working days after notice of this Order, *expressly* inform whether he wishes attorney Castro–Schmidt to continue representing him, or if he wants to retain new counsel.

SO ORDERED.