**UNITED STATES of America,
Plaintiff,**

**v.**

**Russell Charles MEANS and Thomas Richard Poor Bear, Defendants.**

**No. C1–75–23.**

United States District Court,
D. North Dakota,
Southwestern Division.

March 3, 1976.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Richard B. Baer, Bismarck, N. D., for Russell Charles Means.

Irvin B. Nodland, Bismarck, N. D., for Thomas Richard Poor Bear.

### ORDER

VAN SICKLE, District Judge.

Defendants have filed a Rule 21(a) motion asking that the trial of this case be transferred out of the District of North Dakota, asserting that there exists in the District of North Dakota so great a prejudice against the Defendants that they cannot obtain a fair and impartial trial at Bismarck, North Dakota.

To support this claim the Defendants have filed eleven affidavits from mem-

bers of the community. These affidavits reflect the opinion, first that there is substantial prejudice in the Southwestern Division against Indians in general and the American Indian Movement and Russell Means in particular; and second, that this prejudice is so strong and pervasive that an impartial jury cannot be selected from among the populace of the Southwestern Division of the District of North Dakota. In addition, Defendants have filed a statistical survey done by National Jury Project of New York City. The sampler found that within the area surveyed, the principal urban center (Bismarck-Mandan), and one rural county (McLean), the following:

A. As to racial prejudice, approximately ⅔ had a strong racial prejudice against Indians.

B. As to authoritarianism, (a tendency to be hostile to cultures and ways of life other than one's own, and to favor the state in criminal trials), ⁹⁄₁₀ of the sample reflected strong authoritarian attitudes.

C. As to pretrial publicity and the impact of AIM and Russell Means as a symbol of AIM, and its prejudicial impact, more than ⁹⁄₁₀ of the sample identified Means, Wounded Knee and AIM and related them one to another.

The sampler concluded that since racial prejudice and authoritarianism were mutually supportive, and negative attitudes toward AIM and Means were broad and general, the Defendants could not receive a fair trial in the Southwestern Division.

The government responded by showing that in the western divisions of North Dakota, on a comparative basis, as to Indian people, more than the national average number of defendants who went to trial, were being found *not guilty*.

The witnesses who had presented affidavits were then interrogated in open court.

This interrogation brought out that only one of the witnesses—a court reporter in the state court—had ever observed the selection of a jury or followed a trial to its conclusion. And the court reporter had never observed the selection of a jury in Federal Court.

The expert witness who had developed the survey disclosed that another group was in the midst of a survey to test the need for a change of place of trial of persons associated with AIM, who are charged with a recent murder of two Federal Bureau of Investigation Officers. On the basis of professional information he had received from that group, he gave the opinion that these defendants could not receive a fair trial anywhere within the District of North Dakota.

It was apparent that, contrary to the common experience of those who participate in trials, none of the witnesses, including the survey expert, felt that jurors could recognize and discipline their prejudices, and make factual judgments from the evidence before them.

The expert witness recognized that various techniques are available to the court to assist in the selection of jurors who will act impartially. Some of them are:

1. Allow counsel to participate in the voir dire;

2. Allow the minority race defendant to voir dire the jury;

3. Increase the number of peremptory challenges;

4. Change the venue;

5. Require separate voir dire of jurors.

■ Defendants' Rule 21(a) motion for change of venue is a privileged motion allowable only to the defendant.

As pointed out in the discussion under the rules of criminal procedure dealing with venue, Rules 18 through 22, in Wright's Federal Practice and Procedure, venue in federal criminal cases is controlled by a complicated interplay of constitutional provisions, statutes and rules, and important considerations of policy with deep historical roots, which cannot be ignored.

In his textbook, Federal Courts, 2d Ed., Wright sees United States Constitution, Article III, § 2,[1] and the United States Constitution, Amendment VI,[2] as both being addressed only to the Colonial grievance expressed in the Declaration of Independence as "transporting us beyond the seas for pretended offenses."

Again, in the discussion in Wright's Federal Practice and Procedure, § 301, Wright sees the language in Article III, § 2, as a venue assurance (place of trial) and the language in the Sixth Amendment as a vicinage assurance (selection of jurors from the place where the offense had been committed).

But, history suggests to us still another element that went into the language of Article III, § 2. In March, 1774, Parliament had, as part of its attempt to control the rebellious Colonies, passed "The Intolerable Acts" which provided, among other things, that Royal Officers, if indicted for certain crimes, were to be tried in friendly England, rather than in Massachusetts. See A Complete History of the United States, Clement Wood, The World Publishing Co., p. 74.

This concept that the community which had suffered injury should be allowed to judge those charged with the injury, was a very definite issue to the Colonists. It appears in the Bill for Settling the Troubles in America, authored by the Earl of Chatham in 1775, in a provision which prohibits the transfer of those indicted for murder to another province or to Great Britain for trial. The Debate on the American Revolution, Max Beloff, Harper and Rowe, 1965. It appears in the Declaration of Independence as a grievance in this language: [The King has consented to legislation] "protecting (his officers) by a Mock Trial from Punishment for any Murders which they should commit on the Inhabitants of these States."

The interest of a community that those charged with violations of its laws, be tried in that community, is not a matter to be cast aside lightly. And as Wright suggests, very rarely, and only in extreme cases, is a rule 21(a) motion to be granted. Wright Fed. Practice and Procedure, § 341.

This Court finds the following facts:

1. Substantial racial prejudice exists in the Southwestern Division of the District of North Dakota, and the Indian people are the objects of that prejudice.

2. This fact of prejudice requires special attention by the Court in order to assure that Indian people receive fair trials. But the assertion that Indian people cannot receive a fair trial in the Southwestern Division of the District of North Dakota has not been proved.

3. Extreme prejudice exists against Russell Means, the American Indian Movement, and its members and associates, which renders it impossible for Russell Means, or those charged with him under an indictment, to receive a fair trial within the Southwestern Division of North Dakota. But it has not been proved that they cannot receive a fair trial within the District of North Dakota. Therefore,

It is ordered:

A. The motion for a change of venue under Rule 21(a) is denied.

B. To assure that the Defendants receive a fair trial, the following special provisions for trial are ordered by this Court:

1. The place of trial shall be the Southeastern Division of the District of North Dakota, Fargo, North Da-

1. "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

kota. The trial shall begin at 10:00 a. m., April 6, 1976. (Rule 18, Fed. R.Cr.P.)

2. The trials of Russell Means and Thomas Richard Poor Bear shall be severed, and the Russell Means case shall be tried first.

3. In each trial the Defendants shall have 18 peremptory challenges and the United States shall have six peremptory challenges.

4. At the conclusion of the voir dire by the Court, counsel for each side shall have the privilege of not to exceed two hours in which to voir dire the entire panel on the issues of racial prejudice and special prejudice against AIM only.

These provisions are for the protection of the Defendants. Any one or several of them may be waived by the Defendants or either of them.