**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Luis E. DUBON–OTERO (10), and**
**Jorge L. Garib–Bazain (11),**
**Defendants.**

**Criminal No. 97–091(JAF).**

United States District Court,
D. Puerto Rico.

Oct. 26, 1999.

Maria A. Dominguez–Victoriano, Asst. U.S. Atty., Edna Rosario, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.

Frederick P. Hafetz, Susan R. Necheles, New York City, David W. Roman, San Juan, PR, for defendant Dubon–Otero.

Howard Srebnick, Miami, Florida, Charles E. FitzWilliam, San Juan, PR, for defendant Garib–Bazain.

### OPINION AND ORDER

FUSTE, District Judge.

Defendants, Luis Dubón–Otero ("Dubón") and Jorge Garib–Bazaín ("Garib") are charged with conspiracy to commit theft of federal funds through Advanced Community Health Services ("ACHS") pursuant to 18 U.S.C. § 371.

Defendants move for: (1) a change of venue or, in the alternative, a continuance and individual *voir dire* of prospective jurors; (2) certain particulars from the government; (3) dismissal of the forfeiture counts against them; (4) dismissal of the indictment and a stay of this case until the provisions of 28 U.S.C. § 1861 are complied with in selecting the grand and petit juries; and (5) government preclusion from calling as a witness any person to whom the government has offered anything of value.

### I.

#### Brief History

On February 19, 1999, a grand jury returned an indictment charging Defendants Dubón and Garib and nine others with conspiracy to commit theft concerning a program receiving federal funds in violation of 18 U.S.C. § 371. The indictment alleged that Defendants conspired to steal federal monies through ACHS. Defendants Dubón and Garib were also indicted on forfeiture counts pursuant 18 U.S.C. § 982, and Defendant Garib was charged with making false declarations before the grand jury pursuant to 18 U.S.C. § 1623.

On March 11, 1998, we began the first phase of the trial ("AIDS I") involving Defendants Yamil H. Kourí–Pérez, Jeannette A. Sotomayor, and Armando Borel–Barreiro. The jury convicted all three defendants on June 14, 1999.

The second phase of the trial, the trial of Defendants, was scheduled to commence on October 18, 1999.

### II.

#### Prejudicial Pretrial Publicity

The Sixth Amendment guarantees every criminal defendant the right to an impartial jury. U.S. Const. amend. VI; *see also Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Nonetheless, United States courts have a long history of dealing with threats to juror impartiality. In the early republic, pre-

**164**

trial publicity surrounding the treason trial of former Vice President Aaron Burr seized the nation. Chief Justice Marshall, sitting as a circuit judge, determined that exposure to such publicity did not *sua sponte* destroy a potential juror's impartiality. *United States v. Burr*, 25 F.Cas. 49 (No. 14,692g)(C.C.D.Va.1807); *accord U.S. v. Chapdelaine*, 989 F.2d 28, 31–32 (1st Cir.1993). Chief Justice Marshall stated that "[t]he great value of the trial by jury certainly consists in its fairness and impartiality. Those who most prize the institution, prize it because it furnishes a tribunal which may be expected to be uninfluenced by an undue bias of the mind." *Id.* at 50.

In accordance with the Sixth–Amendment protections, convictions will be vacated in trials that are "entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob," *United States v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987) (quoting *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) (internal citations omitted)). This standard, recognizing the many advances of telecommunications and circumstances of our modern society, does not demand total public ignorance as to the issues or facts. *See, e.g., Murphy*, 421 U.S. at 800, 95 S.Ct. 2031; *see also Rideau v. Louisiana*, 373 U.S. 723, 733, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting) (stating that "it is an impossible standard to require [a] tribunal to be a laboratory, completely sterilized and freed from any external factors"). Rather, it requires that a juror be able to "lay aside his opinion and render a verdict based on the evidence presented in court." *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *United States v. Medina*, 761 F.2d 12, 18 (1st Cir.1985) (stating that in cases of pretrial publicity challenges to a fair trial, "[t]he realities of life must, however, be taken into consideration").

■ Rule 21(a) of the Federal Rules of Criminal Procedure, authorizes courts to transfer the proceeding against a defendant where there exists a great prejudice against the defendant in the district in which the case is to be tried. Fed. R.Crim.P. 21(a). "In order to prevail on a motion under Rule 21(a), the defendant must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'" *United States v. Maldonado–Rivera*, 922 F.2d 934, 966 (2d Cir.1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). Some of the factors that courts examine include: (1) the extent to which the government is responsible for generating the publicity; (2) the extent to which the publicity focuses on the crime, rather than the individual defendants charged with it; (3) and other factors reflecting on the ability to obtain impartial jurors. *Maldonado–Rivera*, 922 F.2d at 966. The prejudice must rise to the magnitude that proceeding in that district constitutes a denial of the defendant's right to a fair and impartial trial. *United States v. Hearst*, 466 F.Supp. 1068 (D.C.Cal.1978).

■ The First Circuit has stated that to prove that trial publicity adversely affected his rights, a defendant must prove that (1) a "circus-like" atmosphere will dominate the trial; (2) the actual jurors judging the case are unable to perform their duties impartially; or (3) the inflammatory publicity has so saturated the community that the jurors' objectivity must be called into question. *United States v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987). However, courts may presume prejudice in the rare case in which the community is overwrought with inundations of highly inflammatory publicity. *Moreno Morales*, 815 F.2d at 734 (citing *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)). Given such an exacting standard, it is a rare case that necessitates transfer to avoid prejudice within the district. *See U.S. v. Means*, 409 F.Supp. 115, 117 (D.C.N.D.1976) (citing 2d Crimi-

nal, 2 CHARLES A. WRIGHT, Federal Practice and Procedure § 341 AT 244–45) (STATING THAT "[T]HE INTEREST OF A COMMUNITY THAT THOSE CHARGED WITH VIOLATIONS OF ITS LAWS, BE TRIED IN THAT COMMUNITY, IS NOT A MATTER TO BE CAST ASIDE LIGHTLY. AND AS WRIGHT SUGGESTS, VERY RARELY, AND ONLY IN EXTREME CASES, IS A RULE 21(A) MOTION TO BE GRANTED"). THE COURT HAS WIDE DISCRETION IN DECIDING MOTIONS UNDER RULE 21(A). *UNITED STATES V. ALVARADO,* 647 F.2D 537 (5TH CIR. 1981); *PATRIARCA V. UNITED STATES,* 402 F.2D 314 (1ST CIR.1968).

Additionally, there exist portentous interstices between the constitutional provisions and the concomitant policies and rules concerned in a motion to change venue. The early history of our nation evinces the fact that the Colonists believed in the concept that "the community which had suffered injury should be allowed to judge those charged with the injury." *Means,* 409 F.Supp. at 117 (providing detailed history). Thus, Article III § 2 of the Constitution is often perceived as a venue assurance, particularizing the location of the trial. This guarantee works in conjunction with the Sixth Amendment's right to a jury of one's peers. The Sixth Amendment is widely construed as a vicinage assurance, specifying that jurors will be selected from the location where the offense was committed. *United States v. Means,* 409 F.Supp. 115, 117 (D.N.D.1976) (citing 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 301). To this day, the interest of a community in trying those who violate its laws remains a central tenet of our judicial system. As such, change of venue motions are granted very rarely, only in extreme situations. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 341.

■ On the other hand, requests for a continuance are routine motions that trial judges address almost daily.[1] "A trial court has wide discretion to grant or deny a request for continuance. 'Only an unrea-

soning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel' and would amount to an abuse of that discretion." *United States v. Brand,* 80 F.3d 560, 564 (1st Cir.1996) (citing *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (internal quotations omitted)); *see also United States v. Devin,* 918 F.2d 280, 291 (1st Cir.1990) (stating that "[t]here is an important public interest in the efficient operation of the judicial system and in the orderly management of crowded dockets.... The district judge is at the helm, sensitive to the tides that ebb and flow during a prolonged trial and knowledgeable about systemic demands. He is, therefore, the person best equipped to balance the competing considerations"). "Limits on the court's discretion to grant a continuance are imposed by defendant's constitutional rights, including his rights to assistance of counsel and to the testimony of witnesses on his behalf." *United States v. Soldevila–Lopez,* 17 F.3d 480 (1st Cir. 1994) (quoting *United States v. Waldman,* 579 F.2d 649 (1st Cir.1978)) (citations omitted).

■ When deciding whether to grant a continuance due to pretrial publicity, the court must consider if prejudice exists. *See Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Prejudice should be found if "(1) inflammatory publicity about a case has so saturated a community that it is almost impossible to draw an impartial jury from that community, or (2) so many jurors admit to a disqualifying prejudice that the trial court may legitimately doubt the avowals of impartiality made by the remaining jurors." *United States v. Rodriguez–Cardona,* 924 F.2d 1148 (1st Cir. 1991) (citing *United States v. Angiulo,* 897 F.2d 1169 (1st Cir.1990)).

---

1. Although we have granted, on other grounds, Defendants' motion for a continuance until January 10, 2000, we fully address this issue here to foreclose a repetitive motion in January.

Defendants move for a change of venue due to prejudicial pretrial publicity. In the alternative, Defendants move for a continuance and individual *voir dire* of the prospective jurors. Defense counsel have performed an indubitably complete travail compiling the publicity surrounding this case, and ably presented this work in papers accompanying this motion. *See Docket Document No. 985.* Undeniably, this trial has generated a large amount of publicity. However, we must not lose sight of the issue—whether the publicity in this case renders an impartial trial impossible. We find that it does not.

■ The typical case involving claims of adverse pretrial publicity involves questions of whether the judgment should be reversed due to either prejudice on the part of jurors or a tainted process. Neither of these situations is present here as we are still in the pretrial phase and have not even begun the process of impaneling a jury. Nonetheless, courts may presume prejudice in the rare case in which the community is overwrought with inundations of highly-inflammatory publicity. *Moreno Morales,* 815 F.2d at 734. Defendants' case does not represent such a situation.

Defendants support their motion with an extensive and comprehensive collection of newspaper articles and a listing of the television coverage during the AIDS I trial.[2] At first blush, this voluminous submission is somewhat overwhelming. However, upon closer inspection of the materials, it becomes apparent that the majority of the articles are "largely factual in nature" and concentrate upon Codefendant Kourí. *Coleman v. Kemp,* 778 F.2d 1487 (11th Cir.1985) (citing *Murphy v. Florida,* 421 U.S. 794, 802, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)); *see also United States v. Maldonado–Rivera,* 922 F.2d 934, 966 (2d Cir.1990) (denying motion for judgment of acquittal based on improper venue and noting that articles tended to focus on crime itself and not individual defendants and were largely factual in nature). The First Circuit has noted that to presume prejudice from pretrial publicity, the materials "must be both extensive and sensational in nature." *Angiulo,* 897 F.2d at 1181 (finding that references to defendants which were "not phrased in the most genteel or flattering manner, fall significantly short of the type of emotionally charged, inflammatory, sensationalistic coverage needed to support a presumption of prejudice"). Thus, media coverage that is largely factual in nature actually subverts any presumption of pretrial prejudice. *Id.* Additionally, a large portion of the materials submitted is cumulative because each newspaper or television channel broadcasted the same events on the same days. In this way, it would have been impossible for one person to have read all the newspaper articles in the submission or to have seen each of the television reports. *See generally Coleman,* 778 F.2d at 1538.

■ Defendants also submit the results of a study conducted on their behalf by Gaither International, a market research firm. The study concerned the awareness of the AIDS I trial among members of the potential jury pool, those who are fluent in English. Some of the results were as follows: Ninety percent of those surveyed were aware of the AIDS I trial; eighty-seven percent had seen or heard about the AIDS I trial in the news media; and thirty percent held an opinion on the guilt or innocence or Defendants Dubón and Garib with twenty-eight percent believing that Defendants are guilty. These numbers appear quite startling, but must be examined in light of prior case law on pretrial publicity.

In *Moreno Morales,* twenty-five percent of the jury venire admitted that they be-

---

**2.** Defendants' submission includes 1,432 newspaper articles and lists 195 television reports.

lieved defendants were guilty of the charged crimes and essentially the entire venire admitted knowing about the crime at hand and the subsequent legislative investigation. 815 F.2d at 735. Nonetheless, the First Circuit found that this percentage was not sufficient to presume that the impaneled jurors, who each professed impartiality, were actually prejudiced. *Id.* In addition, the Circuit noted that "[e]ven if [forty-two point eight five percent] 42.85% of the venire can be said to have had a fixed opinion of defendants' guilt or innocence ... we do not think that disabling community prejudice should be presumed." *Id.*, at 735, n. 12 (citing *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (reinstating conviction even though seventy-seven percent of the jury venire admitted to having an opinion about defendant's guilt or innocence)).

A different federal court case found that notwithstanding the fact that two-thirds of the potential jury pool was strongly prejudiced against Native Americans, nine-tenths of the pool reflected strong authoritarian attitudes (tending to be hostile to cultures and ways of life other than one's own and favoring the state in criminal trials), and nine-tenths identified the defendants and the fact that they had a relation to one another, prejudice could not be assumed. *Means,* 409 F.Supp. at 116. The court, rather than changing the venue, simply adopted procedural safeguards ·to ensure defendants received a fair trial. *Id.* at 117–18.

Finally, we turn to *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In that case, the Court found that refusal to grant a change of venue amounted to a denial of due process where the defendant's videotaped admission to bank robbery, kidnaping, and murder was thrice telecast to tens of thousands of people in the community. Out of a population of one-hundred and fifty thousand people, over twenty-thousand people saw or heard the telecast. *Id.* at 724, 83 S.Ct. 1417. Three members of the jury admitted to viewing the admission and two members were deputy sheriffs of the town. *Id.* at 725, 83 S.Ct. 1417. The Court held that it "was a denial of due process of law to refuse the request for a change of venue, after the people of [the community] had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged." *Id.* at 726, 83 S.Ct. 1417. Our case is patently dissimilar from *Rideau.* Neither of the Defendants has confessed on television nor in the print media. Both have steadfastly maintained their innocence and largely sought to avoid any press coverage of their case. Additionally, we face the aforementioned issue that we have not even begun the process of impaneling a jury.

■ Defendants also ask this court to take judicial notice of "frequent raucous demonstrators outside the courthouse, accusing the defendants and their attorneys of being murderers." *Docket Document No. 985, p. 4.* While we specifically recognize that a small group of demonstrators vigilantly picketed during the course of the AIDS I trial, we do not find that this group was "raucous." As we noted during the course of AIDS I:

> There has been no disruption of the normal activities at the Federal Building. We have observed that the small number of demonstrators, usually numbering between four and eight persons, peacefully marches in support of the AIDS cause. Their numbers have remained virtually stagnant and their means ·of expression has not changed throughout the trial.

*Docket Document No. 865.* As we did not find any significant disruption of the trial or prejudice from the picketers at the time of the AIDS I trial, we certainly do not find that the picketing that occurred during that trial prejudiced the upcoming trial. Since we cannot presume prejudice based upon the facts of this case, we deny Defendants' motion for a change of venue.

■ We next turn to Defendants' motion for a continuance. Our first consideration is whether, in fact, prejudice exists. *Nebraska Press Assoc. v. Stuart*, 427 U.S. at 539, 96 S.Ct. 2791. We have found that Defendants have not shown actual prejudice and presumed prejudice does not exist. We fully believe that we can impanel an impartial jury from Puerto Rico society. We intend to take all necessary measures to impanel an impartial jury just as we did in the AIDS I trial.

Moreover, Defendants' situation is different in both kind and quality than the two instances we unearthed in which the First Circuit reversed district court's denial of a continuance. In *Delaney v. United States*, 199 F.2d 107, 115 (1st Cir.1952), the First Circuit found that nationwide publicity created such a hostile atmosphere that defendant was denied his Sixth Amendment right to an impartial trial. However, in that case, a congressional subcommittee had held an investigative hearing right before the trial causing massive pre-trial publicity on a nationwide scale. Some of the evidence revealed at the hearing proved defendant's guilt and some of the damaging evidence would be inadmissible at trial. In light of these circumstances, the Circuit held that denial of a motion for a continuance was an abuse of discretion. *Id.* This is not the situation presented in the instant case. There is no nation-wide media extravaganza or any overwhelming inflammatory sentiment presented here. Furthermore, as we previously discussed, the majority of the publicity surrounding Defendants comes from factual reports of the AIDS I trial. This was not a situation where inadmissable evidence was presented or in which Defendants' guilt was assessed. Nor was it an instance of the legislative or executive arm of government conducting its independent assessment of the facts under different rules than that of the courts. *Id.* at 113 (emphasizing the fact that portions of the damaging evidence aired at the hearing would not be admissible at trial because it concerned alleged criminal and official misconduct which was outside of the scope of the charges in the indictment). Rather, it was a trial in this court. The same rules of cross-examination and evidence apply to both cases, and we do not find that Defendants were impartially prejudiced by anything that occurred in the AIDS I trial. We conducted that trial with the same level of professionalism and integrity which we intend to proceed with this case to ensure Defendants' constitutional right to a fair trial.

In the second case, *United States v. Soldevila–Lopez*, 17 F.3d 480 (1st Cir. 1994), the First Circuit reversed the district court's refusal to grant a continuance on the ground that newly-emergent evidence justified an extension of time. The defendant, Soldevila–Lopez, had alleged that he was incompetent to stand trial. However, one doctor found that defendant was malingering by feigning mental illness. Rather than permit the defendant the extra time to have his own expert examine him, the court denied the continuance and sentenced defendant. The Circuit court found that "Soldevila was clearly prejudiced by his inability to present witnesses that could respond to [the doctor's] report." *Id.* at 489. The court held that such prejudice amounted to a denial of defendant's constitutional right not to be sentenced while incompetent. Once again, the facts in this case are dissimilar to those in *Soldevila–Lopez*, which was not an adverse pretrial publicity case. Defendants have not alleged any new evidence in this case; they are merely asking for more time.

As "[s]ociety cannot be placed in a position where it is unable to bring to trial the violators of its laws," *Moreno Morales*, 815 F.2d at 739, we find that the pretrial publicity in Defendants' case has not reached such overwhelming proportions as to deny the possibility of a fair trial. We deny Defendants' motions for a change of venue and a continuance on the basis of adverse

pretrial publicity. The trial will commence on January 10, 2000 in this court.

## III.

### *Certain Particulars*

 Rule 7(f) of the Federal Rules of Criminal Procedure authorizes courts to direct a filing of a bill of particulars. Fed. R.Crim.P. 7(f). Jurisprudence has established that a bill of particulars should only be granted in cases in which the defendant needs the information to adequately prepare his defense, to minimize surprise at trial or to avoid double jeopardy. *See Wong Tai v. United States*, 272 U.S. 77, 82 (1927); *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir.1989). In conspiracy cases, bills of particulars may be granted to disclose the names of the unindicted co-conspirators in cases in which the government plans to use them as witnesses. *United States v. Barrentine*, 591 F.2d 1069 (5th Cir.1979). However, a bill of particulars is not an investigative tool for defense counsel "to obtain a detailed disclosure of the government's evidence prior to trial." *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.1978). As such, inquiries into government witness lists, *United States v. Largent*, 545 F.2d 1039 (6th Cir.1976), or evidentiary or legal theories, *United States v. Leonelli*, 428 F.Supp. 880 (S.D.N.Y. 1977), are generally not proper purposes for a bill of particulars. A denial of a bill of particulars is reviewable only for an abuse of discretion.

 Defendant Dubón moves for a bill of particulars to inform him as to which amounts of the payments of $779,079.51 allegedly paid to the Dubón & Dubón law firm were unlawfully made. Defense counsel and the government have already engaged in correspondence concerning the particulars at issue. *See Docket Document No. 985, Exhs. E and F*. A careful study of this correspondence evinces that the government has fulfilled its duties. Defendant Dubón has been informed of the charges against him, the fact that the charges involve a $10,000 monthly retainer paid to Dubón & Dubón between 1987 and 1993, and that all of the checks which the government has recovered have been provided in its Fed.R.Crim.P. 12 discovery. *See United States v. Hallock*, 941 F.2d 36, 40 (1st Cir.1991) (stating that relevant inquiry is "'whether the indictment as a whole conveys sufficient information to properly identify' the allegedly unlawful conduct") (citing *United States v. Tomasetta*, 429 F.2d 978 (1st Cir.1970)). We find that the information the government has supplied fully satisfies the requirements for a bill of particulars.

## IV.

### *Dismissal of the Forfeiture Counts*

Defendants allege that Count 34 of the indictment should be dismissed because there is no legal basis for forfeiture of any of Defendants' property. Count 34 of the third superseding indictment charges that "as a result of a conviction of Counts 9 through 33 of this Third Superseding Indictment," Defendants Dubón and Garib "shall forfeit to the United States" the specified property. *Docket Document No. 582*. Defendants maintain that Defendants Dubón and Garib are not named defendants in Counts 9 through 33 and, subsequently, there is no legal foundation for forfeiture of any of their properties.

The government agrees with this result. We, accordingly, dismiss the forfeiture counts against Defendants Dubón and Garib.

## V.

### *Dismissal of the Indictment and a Stay*

Defendants move for dismissal of the indictment and a stay until the provisions of 28 U.S.C. § 1861 are complied with in selecting the grand and petit juries in this case. Specifically, Defendants allege that the federal jury selection process in Puerto Rico illegally discriminates against people with lower incomes in violation of 28

U.S.C. § 1681 and the Sixth Amendment of the United States Constitution. U.S. Const. amend. VI.

We have previously addressed this issue in this very case. *See Docket Documents Nos. 537 and 540.* We, accordingly, decline to revisit it here.

## VI.

### *Preclusion of Government Witnesses*

Defendants move to preclude the government from calling as a witness any person, specifically Angel Corcino–Maurás and Edgardo Rosario–Burgos, to whom they have offered anything of value. Defendants ground their argument in the federal witness-bribery statute, 18 U.S.C. § 201(c)(2).[3]

■■■ We find Defendants' arguments unavailing. The First Circuit, and all other Circuits which have considered this issue, have rejected Defendants' line of thought. *See United States v. Lara,* 181 F.3d 183 (1st Cir.1999); *United States v. Stephenson,* 183 F.3d 110, 118 (2d Cir. 1999); *United States v. Hunte,* 193 F.3d 173, 174 (3rd Cir.1999); *United States v. Haese,* 162 F.3d 359, 366–68 (5th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1795, 143 L.Ed.2d 1022 (1999); *United States v. Ware,* 161 F.3d 414, 418 (6th Cir.1998); *United States v. Condon,* 170 F.3d 687, 688–89 (7th Cir.1999); *United States v. Johnson,* 169 F.3d 1092, 1097 (8th Cir. 1999); *United States v. Singleton,* 165 F.3d 1297, 1298 (10th Cir.1999) (en banc); *United States v. Lowery,* 166 F.3d 1119, 1122–24 (11th Cir.1999); *United States v. Ramsey,* 165 F.3d 980, 987 (D.C.Cir.1999). The First Circuit has unequivocally stated that the federal witness-bribery statute does not prohibit the government from pledging more lenient treatment or like measures to cooperating witnesses. *See Lara,* 181 F.3d at 198.

Furthermore, during the AIDS I trial, both witnesses testified under oath that they did not receive any significant monetary or other benefits for their testimony. We find Defendants' assertions that Angel Corcino–Maurás and Edgardo Rosario–Burgos received "certain benefits" both weak and vague. We see no need to expend further court resources and time on this already settled matter.

## VII.

### *Conclusion*

We **DENY** Defendants' motion for a change or venue or a continuance due to adverse pretrial publicity; **DENY** Defendants' motion for certain particulars; **GRANT** Defendants' motion to dismiss Count 34; **DENY** Defendants' motion to dismiss the indictment pursuant to 28 U.S.C. § 1861; and **DENY** Defendants' motion to preclude the government from calling as witnesses any person to whom they have offered anything of value. This Opinion and Order disposes of *Docket Document Nos. 985 and 1015.*

**IT IS SO ORDERED.**

---

**3.** The statute provides:

> Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).